RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0397P (6th Cir.)
File Name:  00a0397p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

    No. 00-5290

HARVEY LLOYD NAPIER,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 99-00032—Jennifer B. Coffman, District Judge.

Argued:  September 20, 2000

Decided and Filed:  November 21, 2000

Before:  MERRITT and GILMAN, Circuit Judges; BELL,
District Judge.[*]

_____

**COUNSEL**

**ARGUED:**  Robert I. Cusick, Jr., WYATT, TARRANT &
COMBS, Louisville, Kentucky, for Appellant.  James E.
Arehart,  ASSISTANT  UNITED  STATES  ATTORNEY,

_____

[*] The Honorable Robert Holmes Bell, United States District Judge for
the Western District of Michigan, sitting by designation.

1

Lexington, Kentucky, for Appellee. **ON BRIEF:** Robert I. Cusick, Jr., Pamela J. Ledford, WYATT, TARRANT & COMBS, Louisville, Kentucky, Warren N. Scoville, SCOVILLE, CESSNA & ASSOCIATES, London, Kentucky, for Appellant. Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, Martin L. Hatfield, ASSISTANT UNITED STATES ATTORNEY, London, Kentucky, for Appellee.

————————

## OPINION

————————

BELL, District Judge. Defendant-Appellant Harvey Lloyd Napier appeals his conviction under 18 U.S.C. § 922(g)(8) for possession of firearms while subject to a domestic violence order. For the reasons set forth below, we AFFIRM Napier's conviction.

## I.

The essential facts are not in dispute.[1] On January 30, 1999, Napier's estranged wife called the Corbin, Kentucky, Police Department to report an assault by Napier. When Napier's vehicle was stopped, the officers found a 10 mm Glock Model 20 semi-automatic pistol and twenty-two rounds of 10 mm ammunition on the floorboard in the rear of the vehicle. Napier was arrested.

At the time of his arrest Napier was subject to two domestic violence orders. One domestic violence order was entered by the Harlan County Circuit Court on December 9, 1996. The other domestic violence order was entered by the Whitley County District Court on September 28, 1998. Both domestic

———————

[1] The factual predicate for the plea is contained in the transcript of the plea proceeding on November 18, 1999, and in a document entitled "Factual Basis for Guilty Plea" signed by the Defendant and his counsel on November 11, 1999.

the qualified right to bear arms contained in the New Hampshire Constitution as a defense to § 922(g)(1)). *Id.* at 10-11. The court also rejected the argument that the federal gun-control legislation intrudes on the right of the state of New Hampshire to decide who should possess firearms. "The integrity of New Hampshire, which the Tenth Amendment protects, is not violated by a federal statute that outlaws a felon's possession of firearms. The statute is not directed at states as such, but at individual behavior." *Id.* at 10 (citation omitted).

## CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's decision to overrule Napier's various challenges to his convictions under 18 U.S.C. § 922(g)(8).

*United States v. Spruill*, 61 F. Supp.2d 587, 591 (W.D. Tex. 1999).

We find no reason to retreat from our determination in *Warin* that the Second Amendment does not guarantee an individual right to bear arms, and we accordingly hold that § 922(g)(8) does not violate the Second Amendment.

Napier's argument that § 922(g)(8) impermissibly violates his State constitutional right to bear arms is also unavailing. The Constitution of the Commonwealth of Kentucky provides in pertinent part:

All men are, by nature, free and equal, and have certain inherent and inalienable rights, among which may be reckoned:

. . . .

Seventh: The right to bear arms in defense of themselves and of the State, subject to the power of the General Assembly to enact laws to prevent persons from carrying concealed weapons.

KY. CONST § 1.

This state constitutional provision, however, is trumped by the Supremacy Clause of the United States Constitution, which provides that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI. "Thus, as has been clear since the Supreme Court's decision in *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.), 316, 4 L.Ed. 579 (1819), any state law that conflicts with federal law is 'without effect.'" *King v. Ford Motor Co.*, 209 F.3d 886, 891 (6th Cir. 2000) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)).

An argument similar to Napier's was rejected in *United States v. Minnick*, 949 F.2d 8 (1st Cir. 1991). The First Circuit held that the Supremacy Clause prevents reliance on

violence orders contained a finding that acts of domestic violence had occurred and may occur again, and restrained Napier from committing further acts of domestic violence against his spouse and their children. Both orders contained the following notice in boldface type: "Pursuant to 18 U.S.C. § (section) 922(g), it is a federal violation to purchase, receive or possess a firearm while subject to this order." Napier had received actual notice and had an opportunity to participate in both hearings prior to issuance of the orders.

Napier was indicted by a federal grand jury on two counts of possession of firearms by a person subject to a domestic violence order in violation of 18 U.S.C. § 922(g)(8).[2] Count One of the indictment charged him with possession of a semi-automatic handgun on January 30, 1999, while he was subject to two domestic violence orders, and Count Two charged him

---

[2] The statute makes it unlawful for any person

(8) who is subject to a court order that--

(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;

. . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(8).

with possession of twenty-two rounds of 10 mm ammunition on the same date, while he was subject to the same domestic violence orders.

Napier filed three motions to dismiss the indictment. In his first motion he argued that § 922(g)(8) violates the Second and Fifth Amendments of the Constitution and is an unconstitutional exercise of the commerce power. In his second motion he argued that the underlying domestic violence orders were either void or did not qualify as predicate offenses. In his third motion he argued that the domestic violence orders do not fulfill the substantive requirements of 18 U.S.C. § 922(g)(8)(i) and (ii). The district court denied all three motions. On the eve of trial the government made two oral motions *in limine* to exclude evidence regarding the validity of the domestic violence orders and regarding Napier's belief as to the existence of the domestic violence orders at the time of the instant offense. The district court granted the government's motions.

In light of the district court's rulings, Napier entered a conditional plea of guilty to both counts of the indictment. He admitted that on January 30, 1999, in Knox County, in the Eastern District of Kentucky, he knowingly possessed the gun and ammunition. He further admitted that at the time he possessed the firearm and ammunition, he was subject to domestic violence orders in Whitley County, Kentucky, and Harlan County, Kentucky. Finally, Napier admitted that the firearm and ammunition he possessed at the time of the instant offenses were manufactured outside the Commonwealth of Kentucky, and therefore traveled in interstate commerce prior to coming into his possession. As a condition of the plea of guilty, Napier reserved the right to appeal the orders of the district court denying his motions to dismiss the indictment.

## II.

We review the district court's determination of the constitutionality of a federal statute *de novo*. *United States v.*

---

*United States*, 173 F.3d 898, 906 (D.C. Cir. 1999) (rejected challenge to § 922(g)(9) by police fraternal organization, since the statute "does not hinder the militia service of all police officers, only of domestic violence misdemeanants whose convictions have not been expunged"); *United States v. Waller*, 218 F.3d 856 (8th Cir. 2000) ("it is now well-settled that Congress did not violate the Second Amendment" in enacting 18 U.S.C. § 922(g)(1)); *United States v. Smith*, 171 F.3d 617, 624 (8th Cir. 1999) (Second Amendment is inapplicable to conviction under § 922(g)(9)); *United States v. Mack*, 164 F.3d 467, 473 (9th Cir. 1999) (18 U.S.C. § 922(k) did not violate the Second Amendment right to bear arms); *United States v. Three Winchester 30-30 Caliber Lever Action Carbines*, 504 F.2d 1288, 1290, n. 5 (7th Cir. 1974) (§ 1202(a)(1) does not violate the Second Amendment); *United States v. Johnson*, 497 F.2d 548 (4th Cir. 1974) (§ 922(g) does not violate the Second Amendment); *Cody v. United States*, 460 F.2d 34 (8th Cir. 1972) (§ 922(a)(6) does not violate the Second Amendment).

The only case Napier has cited in support of his contention that § 922(g)(8) violates the Second Amendment is *United States v. Emerson*, 46 F. Supp. 2d 598 (N.D. Tex. 1999). In *Emerson*, Judge Cummings observed that "It is absurd that a boilerplate state court divorce order can collaterally and automatically extinguish a law-abiding citizen's Second Amendment rights, particularly when neither the judge issuing the order, nor the parties, nor their attorneys are aware of the federal criminal penalties arising from firearm possession after entry of the restraining order. That such a routine civil order has such extensive consequences totally attenuated from divorce proceedings makes the statute unconstitutional. There must be a limit to government regulation on lawful firearm possession. This statute exceeds that limit, and therefore it is unconstitutional." *Id.* at 611.

*Emerson* stands alone in holding that the Second Amendment guarantees an individual right to bear arms. Even a sister district court in Texas declined to follow *Emerson*, choosing instead to follow the majority path. *See*

impressive Second Amendment scholarship that has developed in recent years. Recent scholarship, however, does not provide a sufficient basis for overruling an earlier decision of this Court. *See Ables*, 167 F.3d at 1027.

The case law subsequent to *Warin* overwhelmingly suggests that our holding in *Warin* was sound. It is well-established that the Second Amendment does not create an individual right. Since *Miller*, "the lower federal courts have uniformly held that the Second Amendment preserves a collective, rather than individual, right." *Love v. Pepersack*, 47 F.3d 120, 124 (4th Cir. 1995). The Ninth Circuit stated in *Hickman v. Block*, 81 F.3d 98 (9th Cir. 1996), that it was following its sister circuits in holding that "the Second Amendment is a right held by the states, and does not protect the possession of a weapon by a private citizen." *Id.* at 101. The Eleventh Circuit held in *United States v. Wright*, 117 F.3d 1265 (11th Cir. 1997), *vacated in part on other grounds*, 133 F.3d 1412 (11th Cir. 1998), that the Second Amendment protects "only the use or possession of weapons that is reasonably related to a militia actively maintained and trained by the states." *Id.* at 1273.

Although the Supreme Court noted in *Staples v. United States*, 511 U.S. 600 (1994), that "[t]here is a long tradition of lawful gun ownership by private individuals in this country," this language does not suggest an individual right to gun ownership under the Second Amendment and it does not infer that lawful gun ownership means unregulated gun ownership. The Supreme Court clearly reiterated in *Lewis v. United States*, 445 U.S. 55 (1980), that legislative restrictions on the use of firearms do not trench upon any constitutionally protected liberties. *Id.* at 65 n. 8.

Every circuit court which has had occasion to address the issue has upheld § 922 generally against challenges under the Second Amendment. *See United States v. Chavez*, 204 F.3d 1305 (11th Cir. 2000); *Gillespie v. City of Indianapolis*, 185 F.3d 693, 709 (7th Cir. 1999) (finding § 922(g)(9) does not violate Second Amendment); *Fraternal Order of Police v.*

*Baker*, 197 F.3d 211, 215 (6th Cir. 1999), *cert. denied*, --- U.S. ----, 120 S. Ct. 1262, 146 L.Ed.2d 117 (2000).

Napier's contention that § 922(g)(8) violates the Due Process Clause and the Commerce Clause of the United States Constitution are not unprecedented. This Circuit previously upheld § 922(g)(8) against similar attacks in *Baker, supra*.

"A fundamental principle of this court is that '[a] panel . . . cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.'" *United States* v. *Ables*, 167 F.3d 1021, 1027 (6th Cir. 1999) (quoting *Salmi v. Secretary of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)). Accordingly, unless *Baker* is distinguishable, or if there are inconsistent decisions of the Supreme Court that require modification of *Baker*, *Baker* precludes us from ruling in Napier's favor on his Due Process and Commerce Clause challenges to § 922(g)(8).

### III.

Napier challenges § 922(g)(8) on due process grounds on its face because it fails to require notice of its prohibitions. Napier also challenges the statute as applied because he contends he did not in fact receive notice that his conduct violated federal law.

According to Napier, § 922(g)(8) is a technical, obscure statute which punishes conduct that a reasonable person ordinarily would not consider to be criminal. In support of this contention, Napier relies on Judge Posner's dissent in *United States v. Wilson*, 159 F.3d 280 (7th Cir. 1998), *cert. denied*, 119 S. Ct. 2371 (1999), and the determination in *United States v. Emerson*, 46 F. Supp.2d 598 (N.D. Tex. 1999), that § 922(g)(8) violates the Fifth Amendment because it is an obscure, highly technical statute with no *mens*

*rea* requirement that renders a person subject to prosecution without proof of knowledge that he was violating the statute.

We rejected just such a challenge to § 922(g)(8) in *Baker*, *supra*. The defendant in *Baker* argued that the district court erred in failing to instruct the jury that it could not convict him of violating § 922(g)(8) unless he knew that the law forbade him to possess firearms while subject to a domestic violence order. 197 F.3d at 218. We noted the general rule that citizens are presumed to know the requirements of the law. We also noted that this rule is not absolute, and may be abrogated when a law is "so technical or obscure that it threatens to ensnare individuals engaged in apparently innocent conduct," because to presume knowledge of such a law would violate a core due process principle, namely that citizens are entitled to fair warning that their conduct may be criminal. 197 F.3d at 218-19. We ultimately determined, however, that it was not necessary to interpret the statute to recognize ignorance of the law as an excuse because Baker did receive adequate notice with respect to the requirements of § 922(g)(8). *Id.* at 219. Each of the domestic violence orders entered against Baker featured a bold print warning that he could not lawfully possess firearms. *Id.*

Although the domestic violence orders entered against Napier contained the same bold print warning that was found adequate in *Baker*, Napier contends that his case is distinguishable from *Baker* because he never received a copy of either domestic violence order entered against him.

The defendant in *Baker* made a similar argument, which this court held was "of no moment." *Id.* at 220 n. 6. Even if Baker had not received direct notice of his firearms disability, his prosecution under § 922(g)(8) would still not have resulted in a violation of his due process rights:

> The fact that Baker had been made subject to a domestic violence protection order provided him with notice that his conduct was subject to increased government scrutiny. Because it is not reasonable for someone in his position to expect to possess dangerous weapons free

in violation of the National Firearms Act as amended by the Gun Control Act of 1968, 26 U.S.C. § 5801 *et seq*. This Court rejected the challenge on the basis that "the Second Amendment guarantees a collective rather than an individual right." *Id.* at 106.

> Since the Second Amendment right "to keep and bear Arms" applies only to the right of the State to maintain a militia and not to the individual's right to bear arms, there can be no serious claim to any express constitutional right of an individual to possess a firearm.

*Id.* at 106 (quoting *Stevens v. United States*, 440 F.2d 144, 149 (6th Cir. 1971)). Even the collective right of the militia is limited to keeping and bearing arms that have "some reasonable relationship to the preservation or efficiency of a well regulated militia." *Warin*, 530 F.2d at 106 (quoting *United States v. Miller*, 307 U.S. 174, 178 (1939)).[4]

Napier has made no effort to show that § 922(g)(8) has some impact on the collective right of the militia. He argues instead that the Second Amendment grants him an individual right to bear arms. He does not contend *Warin* has been overruled by an en banc decision of this Court, nor does he cite any inconsistent decisions of the Supreme Court authority that would require modification of *Warin*. He merely argues that *Warin* was wrongly decided and lacks the benefit of the

---

[4] Although we have not had occasion since *Warin* to rule on the scope of the Second Amendment right to bear arms, we have followed *Warin* in subsequent cases. We noted in *Peoples Rights Organization, Inc. v. City of Columbus*, 152 F.3d 522, 539 (6th Cir. 1998), that "the Second Amendment guarantees a collective rather than an individual right." *Id.* at 539 (quoting *Warin*, 530 F.2d at 106). We also rejected the argument in *Baker, supra*, that § 922(g)(8) deprived Baker of equal protection of the laws in that it "infringes upon the exercise of a fundamental right and operates to a disadvantage of a suspected class." *Baker*, 197 F.3d at 216. Although Baker did not specify what fundamental right was at issue, we noted that he had no fundamental right to possess an assault rifle based upon the finding in *Warin* that the Second Amendment does not guarantee a personal right to bear arms. *Id.* (citing *Warin*, 530 F.2d at 106-07).

We are not convinced by Napier's argument. The *Morrison* Court began its analysis of the Violence Against Women Act by noting that § 13981, like the Gun-Free School Zones Act at issue in *Lopez*, contained no jurisdictional element establishing that the federal cause of action was in pursuance of Congress' power to regulate interstate commerce. *Id.* at 1751. Section 922(g)(8), by contrast, does contain a jurisdictional element that establishes that it was enacted in pursuance of Congress' power to regulate interstate commerce in firearms and ammunition. In addition, the Violence Against Women Act is regulating a purely intrastate activity. Nothing in *Morrison* casts doubt on the validity of § 922(g), which regulates a product of interstate commerce. *See United States v. Wesela*, 223 F.3d 656, 660 (7th Cir. 2000) ("Nothing in *[Morrison* or *Jones]* causes us to think that a different result is now required for § 922(g). . . Nothing in either case casts doubt on the validity of § 922(g), which is a law that specifically requires a link to interstate commerce.") .

## VI.

Finally, Napier contends that § 922(g)(8) violates his individual right to bear arms under the United States and the Kentucky Constitutions.

In contrast to the Due Process and Commerce Clause issues discussed above, this Court has never addressed a Second Amendment challenge to § 922(g)(8). That is not to say that this Court enters this territory without substantial guidance.

The Second Amendment provides:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. Amend.2.

In *United States v. Warin*, 530 F.2d 103 (6th Cir. 1976), the defendant raised a Second Amendment challenge to his conviction for possession of an unregistered submachine gun

from extensive regulation, Baker cannot successfully claim a lack of fair warning with respect to the requirements of § 922(g)(8).

197 F.3d at 220.

Although this language in *Baker* might be considered *dicta*, its reasoning was adopted in *United States v. Beavers*, 206 F.3d 706 (6th Cir. 2000), to support the determination that § 922(g)(9), which makes it a crime for one who has been convicted of a misdemeanor crime of domestic violence to possess a firearm, is constitutional even though it does not require the government to prove that the defendant had actual knowledge that his possession of a firearm was illegal. *Id.* at 709-10. We concluded in *Beavers* that the defendant's conviction on a domestic violence offense sufficiently placed him on notice that the government might regulate his ability to own or possess a firearm. *Id.* at 710.

Napier suggests that in considering whether the domestic violence order proceeding should have put him on notice that the government might regulate his possession of a firearm, the Court should consider the fact that domestic violence order proceedings are often informal and uncounseled.

While there are procedural differences between a domestic violence order and a misdemeanor conviction on a domestic violence offense, we do not find those procedural differences significant. As we pointed out in *Baker*, the nature of the proceeding is not what is important under the statute. It is the status of the individual as one subject to a domestic violence order. 197 F.3d at 216-17:

The fact that Baker's status makes him criminally liable for possessing a firearm does not imbue the process by which he attained that status with constitutional significance. Indeed, a legally relevant status under § 922(g) may arise in the absence of any formal proceeding. For example, § 922(g)(3) prohibits an individual addicted to controlled substances from

possessing a firearm, yet an individual attains the status of a drug addict without a court proceeding of any kind.

197 F.3d at 216-17. "Regardless as to how Baker became subject to a domestic violence protection order, he attained that status and thus must comply with § 922(g)(8)." *Id.* at 217.

Every circuit court which has considered a due process challenge similar to Napier's has rejected it. *See, e.g., United States v. Kafka*, 222 F.3d 1129, 1131-32 (9th Cir. 2000) (no departure from rule that ignorance of the law is no excuse was warranted because the restraining order transformed the otherwise "innocent" nature of the defendant's gun possession); *United States v. Reddick*, 203 F.3d 767, 769-71 (10th Cir. 2000) ("We agree with every circuit court that has considered due process challenges to § 922(g)(8) and conclude that due process does not require actual knowledge of the federal statute."); *United States v. Meade*, 175 F.3d 215, 225-26 (1st Cir. 1999) (individual under domestic violence protection order "would not be sanguine about the legal consequences of possessing a firearm"); *United States v. Bostic*, 168 F.3d 718, 722-23 (4th Cir. 1999) ("Like a felon, a person [subject to a domestic violence protection order] cannot reasonably expect to be free from regulation when possessing a firearm"); *United States v. Wilson*, 159 F.3d 280, 288-89 (7th Cir. 1998), *cert. denied*, 527 U.S. 1024, 119 S. Ct. 2371, 144 L. Ed.2d 774 (1999).

We find no basis for requiring actual notice of the gun prohibition. Napier was notified of the proceedings that led up to issuance of the domestic violence orders and did in fact attend those hearings. He was made subject to a domestic violence order. As we stated in *Baker*, whether or not he received or read those domestic violence orders is of no moment. His status alone, as one subject to a domestic violence order, was sufficient to preclude him from claiming a lack of fair warning with respect to the requirements of § 922(g)(8).

in interstate commerce." *Scarborough v. United States*, 431 U.S. 563, 575 (1977).

We accordingly reject Napier's contention that he could not be convicted under § 922(g)(8) unless the government could show that his continued possession of the gun had a substantial connection to interstate commerce. There is no question that the firearm and ammunition possessed by Napier had previously traveled in interstate commerce. That is sufficient to establish the interstate commerce connection.

Napier also argues that *Baker* should not control the disposition of this case because the Supreme Court's recent decision in *United States v. Morrison*, 120 S. Ct. 1740 (2000), is inconsistent with *Baker* and compels the conclusion that Congress went too far in enacting § 922(g)(8), and that lower courts have erred in construing *Lopez* too narrowly.

In *Morrison* the Supreme Court struck down the civil remedy provision of the Violence Against Women Act, 42 U.S.C. § 13981, on the ground that it exceeded Congress' power under the Commerce Clause. The Court rejected the argument that Congress may regulate noneconomic violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce. *Id.* at 1754. The Court expressed concern that if the Commerce Clause could be satisfied by following a but-for causal chain from a crime to every attenuated effect it had upon interstate commerce, it would obliterate the constitution's distinction between national and local authority. *Id.* at 1752. It would even give Congress authority over "family law and other areas of traditional state regulation since the aggregate effect of marriage, divorce, and childrearing on the national economy is undoubtedly significant." *Id.* at 1753.

Napier contends that the domestic disputes of a married couple addressed in domestic violence orders are precisely the type of purely intrastate activity, typically regulated by the state's police power, that the Supreme Court was concerned about in *Morrison*.

and receiving firearms in or from interstate commerce. Regulation of interstate gun trafficking, which is clearly commercial activity, is thus facilitated by regulation of possession in or affecting commerce." *Id.* at 571-72.

The same analysis applies to those subject to domestic violence orders. *See also Gillespie v. City of Indianapolis,* 185 F.3d 693, 706 (7th Cir. 1999) ("Without question, Congress has the power to regulate the interstate trade in firearms. . . . So long as that gun has moved across state lines at least once, it is subject to the exercise of congressional Commerce Clause authority."); *United States v. Barry*, 98 F.3d 373, 378 (8th Cir. 1996) (§ 922(g)(1) constitutionally applied to a defendant who possessed a shotgun that had traveled in interstate commerce); *United States v. Hanna*, 55 F.3d 1456, 1462 n. 2 (9th Cir. 1995) ("Section 922(g)'s requirement that the firearm have been, at some time, in interstate commerce is sufficient to establish its constitutionality under the Commerce Clause.").

Napier suggests that the recent Supreme Court opinion in *Jones v. United States*, 120 S. Ct. 1904 (2000), puts the *Chesney* analysis in question. In *Jones* the Court held that the arson of an owner-occupied private residence was not subject to prosecution under 18 U.S.C. § 844(i) (prohibiting malicious destruction by fire of property used in or affecting interstate commerce), because such a residence was not used in interstate commerce or in a commerce-affecting activity. *Id.* at 1912. The Supreme Court held that § 844(i)'s use-in-commerce requirement "is most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." *Id.* at 1910.

*Jones* does not invalidate the *Chesney* analysis. In contrast to § 844(i), § 922(g) does not contain the "use" requirement that was at the heart of the *Jones* opinion. Nothing in *Jones* suggests that the Supreme Court is backing off of its opinion that § 1202(a), the predecessor of § 922(g)(1), required only "the minimal nexus that the firearm have been, at some time,

### IV.

Napier contends the district court erred in granting the government's motions *in limine* to exclude evidence at trial regarding the validity of the domestic violence orders and regarding Napier's knowledge of the existence of any valid domestic violence orders.

Napier entered into a plea agreement which reserved his right to appeal the orders of the district court denying his motions to dismiss the indictment. He did not reserve the right to appeal the district court's pretrial evidentiary ruling. Napier expressly admitted, in a document entitled "Factual Basis for Guilty Plea" that at the time he possessed the firearm and ammunition "he was subject to Domestic Violence Orders in Whitley County, Kentucky, and Harlan County, Kentucky." Napier did not preserve the issue regarding the validity of the domestic violence orders for appeal.

Moreover, in light of our determination above that § 922(g)(8) does not require that the defendant have actual knowledge of the firearm restrictions, the district court correctly concluded that the evidence Napier sought to introduce regarding his knowledge as to the existence of those orders was irrelevant.

### V.

Napier also challenges the constitutionality of § 922(g)(8) on the basis that it represents an unconstitutional exercise of Congress' power under the Commerce Clause. Napier contends that § 922(g)(8) is an unconstitutional attempt to regulate domestic abuse, which is strictly a matter of state concern.

Our review of the Commerce Clause challenge begins with the recognition that congressional enactments are entitled to a presumption of constitutionality. "[W]e invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *United*

*States v. Morrison*, 120 S. Ct. 1740, 1748 (2000). There are three broad categories of activity that Congress may regulate under its commerce power: 1) the use of the channels of interstate commerce; 2) the instrumentalities of interstate commerce, or persons or things in interstate commerce; and 3) those activities having a substantial relation to interstate commerce. *Id.* at 1749.

In support of his commerce clause challenge to § 922(g)(8), Napier contends that the Supreme Court's opinion in *United States v. Lopez,* 514 U.S. 549 (1995), requires a finding that Congress exceeded the proper scope of the Commerce Clause when it enacted § 922(g)(8).

A similar argument relying on *Lopez* was made and rejected in *Baker, supra.* In *Lopez* the Supreme Court struck down a federal law prohibiting firearm possession in a school zone because it exceeded Congress' authority under the Commerce Clause.[3] One of the Court's considerations was that the statute contained "no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." 514 U.S. at 562.

We determined in *Baker* that § 922(g)(8) did not suffer from the same infirmity because it contains the jurisdictional element that was lacking in *Lopez.* Section 922(g) only applies to firearms or ammunition that are shipped or transported in interstate or foreign commerce, or possessed in or affecting commerce. 18 U.S.C. § 922(g). With this jurisdictional element, § 922(g) "both explicitly relates to commerce and ensures only those activities affecting interstate commerce fall within its scope." *Baker*, 197 F.3d at 218.

*Baker* does not stand alone. In *United States v. Chesney*, 86 F.3d 564, 568-70 (6th Cir. 1996), and *United States v. Turner*,

---

[3]The Gun-Free School Zones Act struck down in *Lopez* was formerly codified at 18 U.S.C. § 922(q)(1)(A).

77 F.3d 887, 889 (6th Cir. 1996), we relied on this jurisdictional element in upholding § 922(g)(1) against a Commerce Clause challenge. As we stated in *Turner*, every court of appeals that has been faced with the Commerce Clause challenge to § 922(g) since *Lopez* has held that "the jurisdictional element of § 922(g) provides the requisite nexus with interstate commerce that § 922(q) lacked." *Turner*, 77 F.3d at 889.

Notwithstanding our determination in *Baker* that § 922(g)(8) is a proper exercise of congressional power under the Commerce Clause, Napier contends that his case is distinguishable from *Baker* because Baker purchased a gun after he was subject to a domestic violence order. Napier, on the other hand, had possessed his gun for years before a domestic violence order was entered against him. He contends that any commerce involving the firearm had long since ceased, and the link between his conduct and the effect on commerce is too attenuated to come within Congress' power under the Commerce Clause. He contends that even if Congress has the authority to regulate persons who purchase guns when they are subject to domestic violence orders, it does not have the authority to regulate persons who already own guns before they become subject to a domestic violence order.

A similar argument was rejected in *Chesney*. Although there was no question that Chesney's gun had moved in interstate commerce, Chesney argued that *Lopez* requires the government to prove that his possession of the gun in itself had a substantial connection to interstate commerce. 86 F.3d at 570. We rejected that argument because it read *Lopez* too broadly. "*Lopez* . . . did not disturb the Supreme Court's precedents which indicate that a firearm that has been transported *at any time* in interstate commerce has a sufficient effect on commerce to allow congress to regulate the possession of that firearm pursuant to its Commerce Clause powers." *Chesney,* at 570-71 (emphasis added). As we noted in *Chesney*, "[p]rohibiting possession by felons limits the market for firearms, and discourages shipping, transporting,