**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0500n.06

**No. 12-5342**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | *May 20, 2013* |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| THOMAS STETLER, | ) | District of Tennessee |
| | ) | |
| Defendant-Appellant. | ) | **OPINION** |

Before:     BOGGS and COLE, Circuit Judges; and QUIST, District Judge.[*]

BOGGS, Circuit Judge.  Defendant-appellant Thomas Stetler appeals his conviction for possessing a firearm as a prohibited person subject to a domestic-violence order of protection, in violation of 18 U.S.C. § 922(g)(8).  On appeal, Stetler first argues that the district court should have granted his motion, made at the close of the prosecution's case in chief, for a judgment of acquittal, pursuant to Fed. R. Crim. P. 29.  Second, Stetler argues that his conviction should be overturned because the jury returned inconsistent verdicts when it convicted him of possessing a firearm as a prohibited person subject to a domestic-violence order of protection, as mentioned above, but acquitted him of selling firearms across state lines, in violation of 18 U.S.C. § 922(a)(5).  For the reasons that follow, we affirm Stetler's conviction.

---

[*] The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

**I**

The events underlying Stetler's conviction were set in motion on December 29, 2010, when Detective Sergeant David Sakich of the Bedford County Sheriff's Office in Tennessee contacted Stetler, who lived in Ohio, and asked whether Stetler had any guns for sale. After Stetler confirmed that he had guns that he was willing to sell, there were two more phone calls between the two men. From the record, it is clear that during these two calls the parties eventually agreed that Stetler would receive $4,000 in return for delivering 14 guns to Sakich in Tennessee. Both parties agree that Stetler originally was not keen on delivering the guns himself—offering to let Sakich pick them up or to have his son deliver them to Sakich—but that he eventually agreed to perform the delivery. On January 5, 2011, Stetler met Sakich in Tennessee. After Sakich observed the 14 firearms in Stetler's vehicle, he signaled other officers to arrest Stetler.

At the time of Stetler's arrest, he was subject to a domestic-violence order of protection that required him not to "possess, use, carry, or obtain any deadly weapon" and that was valid until February 10, 2011. Accordingly, the government prosecuted Stetler for possessing a firearm as a prohibited person subject to a domestic-violence order of protection, in violation of 18 U.S.C. § 922(g)(8), as well as for selling firearms across state lines, in violation of 18 U.S.C. § 922(a)(5).

At trial, Sakich testified and provided audio recordings of his phone calls and face-to-face meeting with Stetler, all of which were played to the jury. FBI Special Agent Richard Poff testified that he had participated in Stetler's arrest and that he had observed the 14 guns in Stetler's car. He then confirmed that the 14 guns introduced by the prosecution at trial were the same guns that he had observed in the trunk of Stetler's car. Finally, Jason Reeves, a Criminal Investigator for the Bureau

of Alcohol, Tobacco, Firearms, and Explosives, testified that the guns introduced by the government at trial were firearms, as defined by the United States Code, and that they had traveled in interstate commerce.

At the close of the prosecution's case in chief, Stetler moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29, arguing that there was insufficient evidence to support either of the charges against him. The district court denied the motion. Stetler then testified on his own behalf. While he admitted that he had voluntarily placed guns in the trunk of his car and that he was indeed subject to a domestic-violence protective order at that time, he claimed that he mistakenly thought that the protective order had already expired. He also presented an entrapment defense, arguing that he would not have brought the firearms to Tennessee had Sakich not initiated contact and offered to buy them. After the close of trial, the jury convicted Stetler of possessing a firearm as a prohibited person subject to a domestic-violence order of protection but acquitted him of selling firearms across state lines. Stetler now appeals.

**II**

**A**

Stetler first argues that the district judge erred by not granting his Rule 29 motion at the close of the government's case in chief. He argues that the evidence was insufficient to sustain his conviction for possessing a firearm as a prohibited person subject to a domestic-violence order of protection and thus that the judge, in accordance with Rule 29, should have entered a judgment of acquittal. *See generally* Fed. R. Crim. P. 29(a) ("After the government closes its evidence . . . , the

court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.").

We review de novo a district court's denial of a motion challenging the sufficiency of the evidence under Rule 29, *United States v. Coleman*, 458 F.3d 453, 456 (6th Cir. 2006), asking "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Damrah*, 412 F.3d 618, 625 (6th Cir. 2005). "[W]e may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury," *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005), and we are bound to "view[] the evidence in the light most favorable to the prosecution and give[] the prosecution the benefit of all reasonable inferences from the testimony," *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006). Accordingly, "[a] defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986) (internal quotation marks omitted).

Conviction for possessing a firearm as a prohibited person subject to a domestic-violence order of protection requires that the government prove that the defendant: "(1) . . . knowingly possessed a firearm (2) at a time when he was subject to a domestic violence order, and that (3) the firearm was 'in or affecting commerce.'" *United States v. Cope*, 312 F.3d 757, 770 (6th Cir. 2002). First, it is undisputed that Stetler knowingly possessed firearms, as he admits that he retrieved the guns at issue from storage and transported them to Tennessee. *See* Appellant Br. at 11. Second, the

government presented undisputed evidence at trial that the firearms possessed by Stetler were in or affecting interstate commerce, and Stetler does not challenge or even mention this element on appeal.

The only element of the crime that Stetler asserts was not supported by sufficient evidence is the second—that his possession of firearms occurred at a time when he was subject to a domestic-violence order of protection. While Stetler admits that he was subject to a domestic-violence order of protection that had not yet expired when he transported his guns to Tennessee, he nevertheless argues that the government failed to establish the second element of his crime because it did not prove that he *knew* the protective order was still in force. Essentially, Stetler argues that 18 U.S.C. § 922(g)(8) requires knowledge of a protective order's continuing vitality and that, due to his mistake of fact, he lacked the necessary mens rea.

Under this circuit's longstanding case law, however, Stetler's argument fails on its face. In *United States v. Napier*, 233 F.3d 394, 398–99 (6th Cir. 2000), we expressly ruled that a defendant need not have received or even been aware of the contents of a domestic-violence order to be convicted of a violation of 18 U.S.C. § 922(g)(8). We reached this result by noting that the statute requires only that the protective order "was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate," 18 U.S.C. § 922(g)(8)(A), and that the statute did not require any further knowledge on the part of the defendant. We thus held:

> We find no basis for requiring actual notice of the [protective order containing the] gun prohibition. [The defendant] was notified of the proceedings that led up to issuance of the domestic violence orders and did in fact attend those hearings. He was made subject to a domestic violence order. . . . [W]hether or not he received or read those domestic violence orders is of no moment. His status alone, as one subject to a domestic violence order, was sufficient to preclude him from claiming a lack of fair warning with respect to the requirements of § 922(g)(8). . . . [Accordingly,] the

> evidence [the defendant] sought to introduce regarding his knowledge as to the existence of those orders was irrelevant.

*Napier*, 233 F.3d at 399; *see also United States v. Coccia*, 249 F. Supp. 2d 79, 82 (D. Mass. 2003) ("[18 U.S.C. § 922(g)(8)] requires that a defendant have actual notice of the hearing at which the order issued and that a defendant have the opportunity to participate in that hearing. By requiring a hearing and an opportunity to be heard, these provisions satisfy due process, and also prevent a potential defendant from dodging future criminal liability merely by ducking an appearance at an important civil hearing. . . . [Thus] any argument that [a defendant] must have had actual knowledge of the order against him must fail.").

Accordingly, Stetler cannot argue that the government failed to establish the second element of his crime—that his possession of firearms occurred at a time when he was subject to a domestic-violence order of protection—simply by asserting that he mistakenly thought that the protective order had already expired. In the instant case, Stetler had far more than just the required notice of the hearing at which a protective order *might be imposed*; he admits that he had notice that such an order *actually was imposed*, that he received this order, and that he knew it expressly prohibited him from possessing guns for some period of time. That Stetler did not note carefully the exact term of the order does not relieve him of guilt, especially in light of our holding that a defendant who did not even receive a protective order could still be held guilty under § 922(g)(8) as long as he knew of the possibility that one might exist. *Napier*, 233 F.3d 394. It is therefore patently obvious that at least one rational trier of fact could have found that the government established the second element of Stetler's crime beyond a reasonable doubt, as, by his own admission, Stetler already had far more

knowledge than what is required for conviction under 18 U.S.C. § 922(g)(8). Consequently, Stetler's challenge to the sufficiency of the evidence underlying his conviction must fail.

**B**

In addition, Stetler argues that the jury returned inconsistent verdicts when it convicted him of possessing a firearm as a prohibited person, in violation of 18 U.S.C. § 922(g)(8) (Count Two), but acquitted him of selling firearms across state lines, in violation of 18 U.S.C. § 922(a)(5) (Count One). Stetler makes the general claim that, in his case, acquittal of Count One is inconsistent with conviction of Count Two. Stetler also more specifically alleges that his acquittal of Count One indicates that the jury accepted his entrapment defense as to that charge. According to Stetler, once the jury made an entrapment finding as to Count One, it was bound to find that he was also entrapped with respect to Count Two.

To begin, the jury's two verdicts do not appear to be inconsistent. First, it is not clear that the jury acquitted Stetler of Count One based on his entrapment defense. A jury's verdict is not accompanied by a narrative of its reasoning, and the jurors in Stetler's case could have acquitted him of Count One for any number of reasons. In addition, even if the jury did acquit Stetler of Count One based on entrapment, it does not necessarily follow that the jury was inconsistent in finding that he was not entrapped and ultimately guilty of Count Two. The crimes alleged in each count require proof of entirely different elements, and thus acquittal of one does not necessarily render conviction of the other inconsistent.

In any event, "inconsistent verdicts are generally held not to be reviewable." *United States v. Lawrence*, 555 F.3d 254, 262 (6th Cir. 2009). As the Supreme Court has made clear, "[t]he fact

that [verdict] inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable." *United States v. Powell*, 469 U.S. 57, 66 (1984). Rather, "a defendant's protection against an inconsistent verdict lies in an independent review of the sufficiency of the evidence." *United States v. Ruiz*, 386 F. App'x 530, 533 (6th Cir. 2010); *see also Powell*, 469 U.S. at 67 ("[A] criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts."). Thus, as we have already determined that sufficient evidence existed to convict Stetler under § 922(g)(8) for possessing firearms as a prohibited person, he cannot obtain relief by alleging inconsistent verdicts.

## III

For the foregoing reasons, we AFFIRM Stetler's conviction of possessing a firearm as a prohibited person, in violation of 18 U.S.C. § 922(g)(8).