NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0367n.06

Case No. 23-2074

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 24, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| RICKY JAIMAL MEEKS, | ) ) | |
| Defendant - Appellant. | ) ) | OPINION |

Before: SUTTON, Chief Judge; STRANCH and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** The police arrested Ricky Meeks in response to a report of domestic violence and found a gun in his vehicle. A jury later found Meeks guilty of possessing a firearm as a felon under 18 U.S.C. § 922(g)(1). At sentencing, the district court found that approximately a year before his arrest, Meeks used the same gun to commit murder. The court therefore applied the Sentencing Guidelines' cross-reference to second-degree murder.

Meeks argues that his prosecution violated the Second Amendment. He also argues that the district court erred by applying the cross-reference. But because Meeks's criminal history reveals his dangerousness warranting the criminalization of his firearm possession, and because the record sufficiently supports the factual finding that he murdered E.H., we affirm the district court.

**BACKGROUND**

I.      **Facts**

Just after midnight on October 5, 2021, police officers responded to a shooting near the intersection of Terrace Street and Irwin Avenue in Muskegon, Michigan. Officers found a deceased victim, E.H., lying on the sidewalk with ten gunshot wounds. They collected eighteen shell casings, which were all stamped "W9MM2020," but did not find a firearm.

Surveillance video from a school located at the corner of Terrace and Irwin showed a light-colored SUV, later determined to be a Chevy Equinox, traveling to the homicide scene just minutes before the shooting. J.C., a witness who lived on Terrace Street, just south of where the shooting happened, stepped outside his residence after hearing the gunshots to see what was going on. He saw a gray SUV with a Michigan "sunset" plate speeding away from the area, though he did not remember exactly what the license plate said. A sunset plate is a specific type of Michigan license plate displaying the Mackinac Bridge with a sunset in the background. J.C. also provided officers with the surveillance video from his house. Consistent with the school's video, J.C.'s video showed a light-colored SUV passing J.C.'s home just minutes after the shooting.

G.T., E.H.'s ex-wife, informed officers that E.H. had been at her house before the homicide. She heard gunshots shortly after E.H. left. When she arrived at the scene, she saw the fleeing suspect vehicle. G.T. initially told officers that she saw a red car but later said it was a gray SUV.

Almost a year later, on September 11, 2022, Meeks's girlfriend, B.H., called police to her apartment in Lansing, Michigan. Once the police arrived, B.H. reported that Meeks had sexually and physically abused her. Meeks had left her home at that point, and B.H. had heard him grab his keys and a plastic bag, in which he always carried his handgun.

Police then saw Meeks driving a tan Chevy Equinox near the apartment. Meeks fled from the officers while running stop signs. Meeks ultimately lost control of the vehicle, crashed into a residence, and fled from the vehicle on foot. Officers eventually apprehended him and searched the Equinox. Consistent with B.H.'s statement, officers found a Taurus G3 9mm semiautomatic firearm inside a plastic bag on the driver's seat. The gun was loaded with "W9MM2020" ammunition, which is a rare type of ammunition. A crime lab confirmed through ballistics testing that a shell casing found at the scene of E.H.'s homicide a year earlier was fired from Meeks's gun.

The Equinox was registered to B.H. and had a sunset license plate. Meeks did not have his own vehicle, so he often drove B.H.'s Equinox. In fact, others had seen Meeks driving a tan Equinox back in 2021. Moreover, cellphone locational mapping showed that Meeks was in Muskegon about an hour and a half before the shooting and a half hour after the shooting. Investigators also learned that Meeks owned a house in the area.

According to telephone records and U-Haul receipts, B.H. and Meeks left Muskegon for Lansing on October 8, 2021, just three days after E.H. was shot and killed. B.H. told officers that she had been dating Meeks since 2020, that he had a gun, and that he brought that gun with him when they moved to Lansing.

## II. Procedural history

In January 2023, a federal grand jury charged Meeks with possessing the Taurus firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). Meeks moved before trial to dismiss the indictment, arguing that § 922(g)(1) violates the Second Amendment. The district court denied Meeks's motion. A jury found Meeks guilty.

For § 922 crimes, the U.S. Sentencing Guidelines Manual instructs district courts to consider whether the defendant used the firearm "in connection with the commission or attempted commission of another offense[.]" U.S.S.G. § 2K2.1(c)(1). Relevant here, § 2K2.1 provides for a "cross reference" under which the district court must apply, "if death resulted, the most analogous offense guideline from [U.S.S.G. § 2A1] (Homicide)," if doing so results in a higher offense level. U.S.S.G. § 2K2.1(c)(1)(B).

Meeks's presentence report (PSR) determined there was sufficient evidence that Meeks used his gun to kill E.H., but insufficient evidence as to premeditation. Thus, the PSR recommended the application of a cross-reference to second-degree murder under U.S.S.G. § 2A1.2. This cross-reference increased Meeks's base offense level from 26 to 38 and, in turn, his advisory guidelines range from 110 to 137 months to 180 months, the statutory maximum under § 922(g)(1). Meeks objected, arguing there was insufficient evidence that he killed E.H.

At Meeks's sentencing hearing in December 2023, the government presented additional evidence concerning the homicide. The district court overruled Meeks's objection, finding by a preponderance of the evidence that Meeks used the Taurus firearm to shoot E.H. with intent to kill on October 5, 2021. The court explained that ten gunshot wounds on E.H.'s body sufficiently proved an intent to kill. Ballistic evidence also confirmed that Meeks's gun was used to kill E.H. Furthermore, surveillance videos showed a light-colored Chevy Equinox—like the one Meeks often drove—coming to and from the shooting. J.C.'s testimony regarding the sunset license plate buttressed the match.

In the court's view, there were simply "too many coincidences" to believe that Meeks had not committed the shooting. The court imposed a guideline sentence of 180 months' imprisonment.

**ANALYSIS**

First, Meeks argues the district court erroneously denied his motion to dismiss the indictment, because § 922(g)(1) is unconstitutional as applied to him under the Second Amendment. Second, he argues the court erred by applying the cross-reference to second-degree murder, because there was insufficient evidence that he killed E.H. For the reasons below, we reject his arguments.

**I.      Second Amendment claim**

We begin with Meeks's as-applied Second Amendment challenge. We generally review de novo the constitutionality of a federal statute. *United States v. Morton*, 123 F.4th 492, 495 (6th Cir. 2024) (citing *United States v. Napier*, 233 F.3d 394, 397 (6th Cir. 2000)). The government argues that plain-error review should apply because Meeks has forfeited his claim. *See United States v. Burrell*, 114 F.4th 537, 548-49 (6th Cir. 2024) ("[The defendant's] motion to dismiss raised only a facial challenge to § 922(g)(1), so the plain-error standard applies to his as-applied challenge not raised below."). According to the government, Meeks did not properly raise his as-applied challenge before the district court, because his argument instead focused on § 922(g)(1)'s facial constitutionality. We need not resolve this point, however, because Meeks's argument fails even on de novo review. *Cf. United States v. Henson*, No. 24-3494, 2025 WL 1009666, at \*5 (6th Cir. Apr. 3, 2025) (declining to resolve waiver issue where defendant's as-applied constitutional challenge failed even on de novo review).

After the district court denied Meeks's motion to dismiss the indictment, we issued our decision in *United States v. Williams*, which held that § 922(g)(1) is "constitutional on its face and as applied to dangerous people." 113 F.4th 637, 662-63 (6th Cir. 2024). Thus, an individual seeking dismissal of a § 922(g)(1) charge on as-applied grounds must "make an individualized showing that he himself is not actually dangerous." *Id*. at 663. For this inquiry, courts "make fact-specific dangerousness determinations after taking account of the unique circumstances of the individual." *Id*. And courts may consider "a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) conviction." *Id*. at 659-60.

To guide this analysis, *Williams* outlined three relevant categories of criminal offenses. The first category includes "crimes against the person" like "murder, rape, assault, and robbery." *Id.* at 658. These are "violent crimes," which are "at least strong evidence that an individual is dangerous, if not totally dispositive on the question." *Id.* The second category consists of crimes that "do not always involve an immediate and direct threat of violence against a particular person" but "may nonetheless pose a significant threat of danger." *Id*. at 659. Prime examples are drug trafficking and burglary, which "often lead[] to violence" and thus "justify a finding of danger." *Id.* Finally, the third category includes crimes that "cause no physical harm to another person or the community," such as mail fraud and making false statements. *Id.* "[M]any of these crimes don't make a person dangerous." *Id*.

On appeal, rather than argue he is not actually dangerous, Meeks generally argues that the district court did not have the benefit of *Williams*. He asks us to either reverse the denial of his motion to dismiss the indictment, or remand to the district court to provide him with the opportunity to prove he is not dangerous.

But a remand is not appropriate where "the record evidence would have indisputably led the district court to conclude that [defendant] was dangerous enough to be constitutionally disarmed." *See Henson*, 2025 WL 1009666, at *7 (collecting cases). Such is the case here. Meeks's prior convictions include assault with a dangerous weapon, which is the type of "crime[] against the person" that "speak[s] directly to whether an individual is dangerous." *Williams*, 113 F.4th at 658. In committing that crime, Meeks hit someone with his vehicle, and when that individual and others later walked toward Meeks, he shot at the victim two times before his gun jammed, allowing the victim and others to escape. This criminal activity alone establishes Meeks's dangerousness. *See id.* at 662 (concluding that a past felony conviction for aggravated robbery, a crime against a person, "alone is sufficient to conclude that [defendant], if armed, presents a danger to others or the public").

And Meeks's remaining criminal history removes any doubt about his dangerousness. Meeks's prior conviction for delivery or manufacture of a controlled substance is a "prime example" of *Williams*'s second category of crimes that "put[s] someone's safety at risk, and thus, justif[ies] a finding of danger." 113 F.4th at 659. Moreover, the facts underlying Meeks's prior convictions for fleeing and resisting officers show a pattern of putting others in danger. In 2006, when officers tried to stop Meeks in a potentially stolen vehicle, he fled, lost control, jumped out of the vehicle, and was apprehended after he jumped a fence and fell to the ground. Then in 2015, when officers ordered him to step out of his car during a traffic stop, Meeks sped away, reaching speeds of 130 miles per hour, and eventually struck a curb before being arrested. This is dangerous conduct. *See United States v. Raphael Williams*, No. 24-1409, 2025 WL 1136326, at *3 (6th Cir. Apr. 17, 2025) ("Fleeing and eluding . . . can properly be considered as falling into the second category of offenses that may make a person dangerous . . . .").

- 7 -

Though the government makes additional arguments regarding Meeks's dangerousness, the above is sufficient to reject Meeks's claim. We hold that § 922(g)(1) is constitutional as applied to Meeks and affirm the district court's denial of his motion to dismiss the indictment.

## II.     Cross-reference to second-degree murder

Next, we review the district court's application of the cross-reference to second-degree murder. Meeks argues the government failed to prove by a preponderance of the evidence that he murdered E.H. Such factual challenges trigger a deferential clear-error standard of review. *See United States v. Caston*, 851 F. App'x 557, 560 (6th Cir. 2021). A district court's factual finding is not clearly erroneous "as long as the finding is 'plausible in light of the record viewed in its entirety[.]'" *Id.* (alteration in original) (quoting *United States v. Viney*, 728 F. App'x 479, 482 (6th Cir. 2018)). "That is the case even if enough evidence exists for the opposite finding and even if we would have made that opposite finding ourselves." *Id.* (citing *Viney*, 728 F. App'x at 482). To reverse, we must be "left with the definite and firm conviction that the district court made a mistake." *United States v. Mills*, 126 F.4th 470, 474 (6th Cir. 2025) (quoting *United States v. Ellis*, 938 F.3d 757, 761 (6th Cir. 2019)).

This deferential standard requires us to affirm, because the evidence plausibly supports the district court's conclusion that Meeks murdered E.H. The court mainly relied on two categories of evidence. First, the crime lab concluded that the weapon found on Meeks—i.e., the basis for his § 922(g)(1) conviction—was the weapon used to kill E.H. At the time of his arrest, the weapon was loaded with the same "unique ammunition" found at the murder scene. That ammunition—stamped "W9MM2020"—was so rare that the testifying ATF agent with sixteen years' experience had never encountered it. Nor had other ATF agents in Michigan or Oregon with whom he conferred.

- 8 -

Second, there was evidence connecting Meeks to the scene of E.H.'s death a year prior to the seizure of the weapon. The court explicitly acknowledged the year-long "time gap," which left open the possibility that Meeks came into possession of the weapon sometime after the homicide and that some other individual was responsible for E.H.'s death. But, in the court's view, the circumstantial evidence made that possibility unlikely. For example, the video evidence showed a vehicle substantially matching the one to which Meeks had access at the time—a light-colored Chevy Equinox—heading toward and away from the location of the homicide. And the court found the timing of the videos "particularly important." RE 108, Sent'g Tr., PageID 1373. The Chevy headed toward the shooting scene "at 12:14 [a.m.] or somewhere in that vicinity"; the call to the police dispatch after the gunshots occurred "at 12:16 a.m."; and the same type of Chevy was seen headed away from the scene "shortly thereafter." *Id.* at PageID 1373. J.C., who lived near the scene of the homicide and heard the gunshots, testified that the fleeing vehicle he saw had a Michigan license plate with a distinctive sunset design. Meeks's vehicle's license plate had this same design, which was "fairly new[]" at the time. *Id.* at PageID 1334, 1352. In the court's view, there were simply "too many coincidences . . . not to tie Mr. Meeks . . . to the homicide." *Id.* at PageID 1374-75. Under the deferential clear-error standard, we must affirm this plausible conclusion. *See United States v. Curtis*, No. 24-1095, 2025 WL 448945, at *8 (6th Cir. Feb. 10, 2025) (affirming application of cross-reference to first-degree murder where district court relied, in part, on locational evidence and ballistics evidence showing casings at the scene came from defendant's gun).

Meeks points to evidence potentially implicating others. He emphasizes that multiple witnesses gave contrary descriptions of the suspect vehicle, ranging from a "red" car to a "black Dodge Charger." He also identifies several other individuals who may have had a motive to harm

E.H. Finally, he notes that B.H.—Meeks's girlfriend—testified that she never actually saw him with the weapon at issue.

Meeks's arguments are largely duplicative of the same points that he made, and that the district court heard and considered, during the sentencing hearing. In fact, the court asked follow-up questions of Meeks's counsel about B.H.'s knowledge as to Meeks's possession of a gun in October 2021 and about countervailing evidence suggesting that Meeks killed E.H.

The central problem with Meeks's argument is that, rather than affirmatively negate the plausibility of the district court's factual finding, he at most establishes it was plausible that another individual killed E.H. Such argument is insufficient grounds for reversal under the clear-error standard. *Caston*, 851 F. App'x at 560 ("[W]henever conflicting evidence permits a district court to make two 'permissible' findings, [we] must respect its choice of one finding over the other." (quoting *United States v. Frost*, 521 F. App'x 484, 491 (6th Cir. 2013))). For instance, that B.H. never saw Meeks with the weapon in question does not discount the evidence relied on by the district court. After all, at the time of his arrest, Meeks possessed the weapon that the crime lab concluded was used to kill E.H, and, on appeal, Meeks argues only that it is at least as likely that the gun ended up in Meeks's possession after the shooting as it is that Meeks possessed the gun at the time of the shooting.

The same goes for Meeks's reliance on witnesses' varying descriptions of the suspect vehicle. Not only do those descriptions contradict each other, but there was undisputed video evidence placing a vehicle substantially matching Meeks's vehicle in close geographic proximity to the homicide scene "within five minutes of the gunshots." RE 108, Sent'g Tr., PageID 1360.

Likewise, the fact that other individuals may have had a motive to harm E.H does not establish either that one of them killed E.H. or that Meeks did not.  In short, none of Meeks's arguments provide a reason to doubt the plausibility of the district court's factual finding that he murdered E.H.

## CONCLUSION

For these reasons, we affirm.