NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0433n.06

No. 08-3473

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 15, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| KARLA RUIZ, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: **KENNEDY** and **COLE** Circuit Judges, and **JORDAN**, District Judge[*]

**JORDAN**, District Judge.  Following a lengthy jury trial, appellant Karla Ruiz

was found guilty of traveling in interstate commerce with the intent to promote or

facilitate an unlawful activity (18 U.S.C. § 1952(a)(3)).  The jury, however, found her

not guilty of the alleged unlawful activity, that is, a conspiracy to distribute controlled

substances.  In this appeal, Ms. Ruiz argues that the district court erred in denying

her motion for judgment of acquittal or for a new trial because the jury's verdict was

so inconsistent that her conviction cannot stand and, in any event, the evidence was

---

[*]The Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

insufficient to support the conviction. We find no merit to either of the appellant's arguments, and we **AFFIRM** her conviction.

## I. BACKGROUND

At trial, the government's evidence showed that numerous persons, some in California and some in Ohio and Illinois, were importing large amounts of marijuana and cocaine from California to Ohio and other states. Various witnesses testified that the conspirators used several females who transported the drugs and cash proceeds in two vehicles – a green Honda Odyssey van or a grey Dodge Intrepid. The government's theory was that Ruiz was one of the females who arranged the trips and, on occasion, drove one of the vehicles. One of the other drivers was Eunice Silva. Prior to trial, Silva pleaded guilty and testified about her courier activities with Ruiz.

Silva described how she was recruited by her brother who was in jail in California with Ruiz's husband. Although Silva was not specifically told that the trips would involve drugs and cash, she knew that was the purpose. Karla Ruiz called Silva and arranged for her to drive on a "test" trip to Waukegan, Illinois, with Bonnie Rendon. Silva was not paid for that trip. Ruiz then called and arranged for Silva to transport eight kilograms of cocaine to Springfield, Ohio, in November 2001 with Ruiz's sister-in-law, Monica Garcia, in whose name the van was registered. Ruiz paid Silva $2000 upon her return.

2

Ruiz arranged another trip with Silva to Springfield in December 2001, but by this time agents were aware of the activities of the conspiracy and the group was under investigation. The Odyssey van was driven to a restaurant parking lot in Springfield, Ohio, where it was left with the keys inside. Two other conspirators who had flown into Ohio to conduct the drug transaction picked up the van and drove it to a garage, and seven kilograms of cocaine were removed from a secret compartment in the dashboard. Agents were able to interrupt the drug transaction and seize most of the cocaine and some drug proceeds. The van was returned to the parking lot and Ruiz and Silva began their trip back to California. This time, however, at the request of a DEA agent the van was stopped for a traffic violation. Ruiz was driving and Silva and Ruiz's three-year-old child were passengers in the van.

The Ohio State Trooper who stopped the van had a drug dog with him which he used to check the exterior of the van. The dog alerted and the van was searched for drugs and cash. Only a small amount of cocaine and methamphetamine were found in a compact in Silva's bag, and she was arrested for possession. The van was seized and searched more carefully. Two hidden compartments were found, one in the dashboard and one in the rear panel, but both were empty. Ruiz and her child were released. Silva testified that she drove to Ohio and other states after the December trip and that each trip was arranged by Ruiz.

Ruiz was indicted with three others and charged with conspiracy to distribute and to possess with the intent to distribute in excess of five kilograms of cocaine. She was also charged with a violation of the Travel Act, 18 U.S.C. § 1952(a)(3), which prohibits traveling in interstate commerce with the intent to promote or facilitate an unlawful activity. The "unlawful activity" that formed the basis of this charge was identified in the indictment as "a business enterprise involving an unlawful conspiracy to possess with the intent to distribute a controlled substance." Ruiz and Asmed Escareno went to trial, but the other co-conspirators pleaded guilty. Ruiz was found guilty of the Travel Act count and Escareno was convicted of all the charges against him. Ruiz filed a post-trial motion for judgment of acquittal or a new trial which was denied by the district court. She was sentenced to 54 months in prison and a three-year term of supervised release.

## II. DISCUSSION

### A. Standard of Review

On the issue of whether the jury verdict was so inconsistent that Ruiz is entitled to a new trial, this court reviews the district court's decision to deny a new trial for an abuse of discretion. *United States v. Lawrence*, 555 F.3d 254, 261 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 1879 (2010). An abuse of discretion may be found when the district court relies on "clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *Id.* (quoting *United States v. White*, 492 F.3d 380, 408 (6th Cir. 2007)). This court reviews de novo Ruiz's

4

claim that she is entitled to a judgment of acquittal because the evidence was not sufficient. *United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007). The question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

## B. Inconsistent Jury Verdict

Ruiz argues that conspiracy was an element of the Travel Act count and therefore the jury's determination that she was guilty of the Travel Act count but not the conspiracy count creates an impermissible inconsistent verdict. She characterizes the conspiracy charge and the Travel Act charge as "mutually exclusive crimes," arguing that the conspiracy was a necessary element of the Travel Act charge. Ruiz takes the position that the not-guilty verdict on the conspiracy count demonstrates that the "jury did not (and apparently could not) find that a conspiracy existed," and in the absence of a conspiracy, the Travel Act count must be dismissed.

Ruiz recognizes that the Supreme Court has repeatedly found that jury verdicts like the one in this case should not be reviewed. In *United States v. Powell*, 469 U.S. 57 (1984), the Court considered a factual situation very much like the one before this court and found that there was no reason to review the jury's verdict. *Id.* at 69. In *Powell*, the defendant was charged in a 15-count indictment with conspiring with her minor son and husband to possess with the intent to

5

distribute cocaine, possession with the intent to distribute cocaine, and several counts of using a telephone to commit and facilitate the drug felonies. The jury acquitted her on the conspiracy count and the possession count, but found her guilty of three of the telephone facilitation counts. *Id.* at 59-60.

Powell argued that proof of the conspiracy or the possession counts was an element of each of the telephone facilitation counts, so the jury's verdict was inconsistent. *Id.* at 60. The Court reiterated the rule it adopted in *Dunn v. United States*, 284 U.S. 390, 393 (1932):

> The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.

*Id.* at 63 (quoting *Steckler v. United States*, 7 F.2d 59, 60 (2d Cir. 1925)). The Court went on to point out that a defendant's assumption that the error was in the conviction is no more than speculation; the opposite could have been true – that the error was in the acquittal, but the government has no right to challenge the acquittal on grounds of inconsistency. *Id.* at 65. "The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable." *Id.* at 66. Instead, a defendant's protection against an inconsistent verdict lies in an independent review of the sufficiency of the evidence. *Id.* at 67.

6

Nevertheless, Ruiz has seized upon a footnote in the *Powell* opinion that excepts a situation where a guilty verdict on one count necessarily excludes a finding of guilt on another. *Id.* at 69, n. 8; *see also United States v. McCall*, 85 F.3d 1193, 1197-98 (6th Cir. 1996) (using the term "mutually exclusive" but finding that the verdicts were not reviewable). This court finds, however, that this is not a case where the exception would apply. In crafting the exception, the Court contemplated a situation in which a defendant receives two guilty verdicts that are logically inconsistent, for example if a jury convicted a defendant of both larceny and embezzlement based on the same underlying conduct. *See United States v. Daigle*, 149 F. Supp. 409, 414 (D.D.C. 1957), *cited in Powell*, 469 U.S. at 69 n.8. Even putting aside the obvious distinction that Ruiz has received one guilty and one not-guilty verdict, just as in *Powell*, we conclude that the two charged crimes are interdependent rather than mutually exclusive. Contrary to Ruiz's contention, a not-guilty verdict on the conspiracy count is not determinative of whether Ruiz intended to promote or facilitate an unlawful activity while traveling in interstate commerce. As the Court noted in *Powell*, the verdict could reflect jury lenity, or even a mistaken acquittal. *Powell*, 469 U.S. at 64-65.

We find that this issue is controlled by the Supreme Court's decision in *Powell* and decline to review the jury's verdict. There is no reason to vacate a conviction "merely because the verdicts cannot rationally be reconciled." *Powell*, 469 U.S. at 69.

## C. Sufficiency of the Evidence

As directed by the Supreme Court, Ruiz's avenue of relief, if any, is through a sufficiency of the evidence evaluation. The indictment charged that Ruiz traveled from California to Springfield, Ohio, to facilitate the distribution of controlled substances. In order to prove this charge, the government had the burden to show that the defendant traveled in interstate or foreign commerce with the intent to promote or facilitate an unlawful activity and that she performed or attempted to perform an act that promoted or facilitated the unlawful activity. *United States v. Driver*, 535 F.3d 424, 430 (6th Cir.), *cert. denied*, 129 S. Ct. 662 (2008).

In support of her contention that the government has failed to satisfy its burden, Ruiz asserts that "the jury did not (and apparently could not) find that a conspiracy existed," so one of the elements of the Travel Act – the unlawful activity – did not exist. To the extent that this is simply her argument that the jury verdict is impermissibly inconsistent restyled as an insufficient evidence claim, the Supreme Court has foreclosed it in *Powell*:

> [R]espondent's argument that an acquittal on a predicate offense necessitates a finding of insufficient evidence on a compound felony count simply misunderstands the nature of the inconsistent verdict problem. Whether presented as an insufficient evidence argument, or as an argument that the acquittal on the predicate offense should collaterally estop the Government on the compound offense, the argument necessarily assumes that the acquittal on the predicate offense was proper – the one the jury "really meant." This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent.

8

469 U.S. at 68.

When treated as an argument that there was insufficient evidence for a reasonable trier of fact to conclude beyond a reasonable doubt that she traveled across state lines to promote or facilitate the "unlawful activity" of a drug-trafficking conspiracy, Ruiz's argument likewise fails. Our review of this claim should be "independent of the jury's determination that evidence" on the conspiracy count "was insufficient." *Id.* at 67. Much of the testimony during the lengthy trial concerned the existence of the conspiracy, that is, who was involved and how the cocaine was delivered. Part of that proof came from Silva who detailed her involvement as a courier for the conspiracy. She described how Ruiz called her to set up the trips to Ohio and that Ruiz was with her in December 2001 when the van was stopped. Silva testified that she knew that they were transporting drugs and cash, although she had not been specifically told that information. Thus, based on Silva's testimony, there was evidence that Ruiz traveled from California to Ohio in a van that had secret compartments to hold drugs and cash. Further, Silva's testimony about her courier activities was corroborated by other evidence, including the stop of the van.

Although Ruiz contends that Silva's testimony was so incredible that it could not support her conviction, it was for the jury to decide whether to credit Silva's testimony. The jury was told to consider the co-defendants' testimony with "more caution," but they could base their verdict on the unsupported testimony of these

9

witnesses if they believed it beyond a reasonable doubt. Obviously, the jury believed enough of Silva's testimony to find that Ruiz was a courier for the conspiracy. Considering all the evidence in the light most favorable to the government, we find that there was sufficient evidence to support the defendant's conviction.

## III. CONCLUSION

For the foregoing reasons, the judgment of conviction is **AFFIRMED.**