**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0497n.06

Case No. 14-2058

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Jul 13, 2015 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| JAMES ALBERT BECKMAN, JR., aka Jim | ) | MICHIGAN |
| Beckman, Jimmy Beckman, aka | ) | |
| Jimmyab2010, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: SUTTON, GRIFFIN, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** James Beckman challenges his fifteen convictions on a number of grounds. We AFFIRM.

A sixteen-count superseding indictment charged that Beckman sexually exploited and attempted to sexually exploit a minor, 18 U.S.C. § 2251(a) and (c), 18 U.S.C. § 2256; attempted to coerce and entice a minor to engage in sexual activity, 18 U.S.C. § 2422(b); and distributed and received child pornography, 18 U.S.C. § 2252A(a)(2)(A) and (b)(1), 18 U.S.C. § 2256(8)(A). A jury found Beckman guilty on fifteen counts: ten of attempted sexual exploitation, one of attempted coercion and enticement, and two each of receipt and distribution

of child pornography.[1]  The district court imposed an aggregate 360-month sentence and lifetime supervised release, and ordered restitution.  Beckman appeals his convictions.

## I.

Beckman and his ex-wife divorced in 2007, and their two sons' visitation alternated between Beckman's home and their mother's home.  The oldest son, Child 1, was nine years old when, on September 26, 2012, he confided in his mother that his father had touched him sexually while a laptop computer and attached web camera displayed the touching on screen.  Child 1 said his father had done similar things two or three other times and that the latest incident occurred a day or two earlier.  The Michigan State Police investigated and Beckman consented to a search of his home and the seizure of several computers, his work-assigned Blackberry cell phone, flash drives, and other equipment.  Beckman turned over an HP computer at his workplace.

Further investigation revealed that Beckman had yet another work computer, a Lenovo laptop, which was seized soon after.  Forensic analysis of the Lenovo revealed portions of chats to and from the Yahoo! Messenger account "jimmyab2010" that discussed sexual exploitation of children, that a webcam had been used with the Lenovo, and that Beckman had accessed videos with filenames indicative of child pornography.

A search-warrant-authorized examination of Beckman's Yahoo! account, "jimmyab2010," yielded thousands of pages of chats through Yahoo! Messenger indicating that Beckman transmitted child pornography live, via webcam, and distributed and received child pornography.

At the two-week jury trial, the Government called witnesses including the FBI special agent in charge of the investigation, state law-enforcement officers, a Yahoo! director of

---

[1] The jury acquitted Beckman of the completed offenses of sexual exploitation charged in counts 1, 2, 4, and 7 through 12, and on count 6, attempted sexual exploitation.

2

engineering, computer experts, and members of the IT department at Beckman's employer. Child 1 testified (via remote camera) that, after masturbating in front of him a number of times and showing him pornographic videos of children and adults, Beckman would enter Child 1's bedroom after Child 1 had fallen asleep, Beckman would pull the sheets and blankets off Child 1 and touch Child 1's penis, at least once using a webcam that contemporaneously displayed what Beckman was doing to him, and at other times aiming the webcam at Child 1's genitals. Charles Hughes and Justin Schrode, who were identified through the investigation of jimmyab2010, testified that they received live transmissions of pornography from jimmyab2010, via webcam.[2] Schrode posed as a woman with a young niece and chatted with Beckman regarding his sexual conduct with Child 1. Hughes also posed as a woman, Sttace1324, and admitted that he asked jimmyab2010 to abuse a child at his direction while watching a video feed. Hughes testified that he saw Child 2 nude in the shower and saw Beckman rubbing his penis on Child 2's buttocks. Hughes also testified that he saw Beckman masturbating in a room with Child 2 present and saw Beckman reach under the victim's groin area and appear to be touching the child's penis.

Defense witnesses included a forensic specialist who analyzed Beckman's work-assigned Lenovo laptop, the only computer on which child pornography was loaded; a psychologist who critiqued the forensic evaluation conducted of Child 1, and Beckman, who denied sexually abusing his children, streaming to others live via webcam his sexual conduct with Child 1, and intentionally receiving or distributing pornography. Beckman testified that his chats were fantasy.

---

[2] Schrode resided in Illinois and Hughes in Pennsylvania.

## II. Denial of Motion to Suppress

Beckman challenges the district court's denial of his motion to suppress evidence seized from his Yahoo! account pursuant to a federal warrant.

Review of the district court's legal conclusion regarding the existence of probable cause is de novo. *United States v. Helton*, 314 F.3d 812, 820 (6th Cir. 2003). This court must uphold the district court's factual findings unless clearly erroneous, giving deference to an issuing judge's finding of probable cause in a search warrant application, and reversing that determination only if arbitrary. *Id.*

Beckman argues that the warrant application failed to establish the requisite nexus between the factual basis for the warrant and his jimmyab2010 Yahoo! account. We disagree. The search warrant application and continuation sheet established that police had found over 300 images of suspected child pornography received through Yahoo! Messenger on Beckman's Lenovo laptop and a chat history between jimmyab2010 and others suggesting that this account was used in sexually exploiting children or distribution and receipt of child pornography. The warrant application, prepared by FBI Special Agent Kovac, quoted various chats during which jimmyab2010 offered to put one of his sons in front of the computer to engage in sexual conversation with a user named Kathy, jimmyab2010 asked a user named sharkhunt2421 whether her daughter watched her "cum as well?," and whether her daughter helped sharkhunt2421 "jerk some," and jimmyab2010 messaged that "I have shown a kinky mom his hard on before" "on cam," referring to Child 1. The warrant established a connection between the charged offenses and Beckman's Lenovo laptop and Yahoo! Messenger account.

Beckman also argues that the search warrant application lacked enough factual information to establish probable cause that evidence of the alleged crimes would be found

because, as counsel clarified at argument, it is unclear whether real-time live chats, images, and video chatting *can be stored at all* (like emails) and even if they can be stored, that Yahoo! would save or preserve them so that they were accessible to the Government through the search warrant.

In essence, Beckman maintains that all the Government could be confident of finding is records of the fact of the real-time live chat messages. The short answer is that even if Beckman is correct, such records would support that the chats actually happened through jimmyab2010 Yahoo! Messenger activity on Beckman's Lenovo and were relevant to the offenses charged.

Further, the warrant application need not have established with certainty that the information sought would be found in Yahoo!'s records; "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Maryland v. Garrison*, 480 U.S. 79, 87 (1987) (quoting *Hill v. California*, 401 U.S. 797, 804 (1971)). We affirm the district court's determination that the magistrate judge had a substantial basis for concluding that evidence of a crime would be found in Beckman's Yahoo! account. *See United States v. Williams*, 544 F.3d 683, 685–90 (6th Cir. 2008).

### III.  Admission of Chats with Unidentified Individuals

Beckman contends that the district court erroneously admitted "chats" between him and *unidentified* individuals outside of the charged counts and specific dates alleged in the superseding indictment. He first asserts that these chats were irrelevant; but since he disputed identity, knowledge, and intent, the chats were clearly relevant. Fed. R. Evid. 401, 402; *United States v. Delaney*, 443 F. App'x 122, 132 (6th Cir. 2011).

Beckman next argues that at least seventeen of these chats were inadmissible under Fed. R. Evid. 404(b) because "words themselves cannot constitute other acts unless there is some sort

5

of proof that the words are actually a criminal act." Appellant Br. 27. Without citing authority, Beckman argued to the district court that, to the extent these chats involved charged counts, they were admissible as admissions, but that the remaining chats were fantasies and not admissions unless the Government called the other parties to the chats. The district court expressed skepticism, requested that counsel find supporting authority, and delayed ruling on the admissibility of these chats until trial. The district court ruled the chats admissible at trial.

In any event, Beckman is incorrect. Six of these chats were offered not under Rule 404(b) or 414, but because they involved charged offenses: exhibits 123, 136, and 138 (between April 27 and May 1, 2012, chats discussing incidents when he "web cammed" his sons, i.e., admissions as to counts 3 and 4, attempted sexual exploitation; 154 (between July 28 and July 30, 2012, discussing showing Child 1's penis via webcam, i.e., the basis for Count 11, attempted sexual exploitation); 176 (January 19, 2012, chats in which jimmyab2010 identified himself by his real name and identified his sons by their real names and ages), and 178 (chats in which Beckman stated, "I only c2c" [cam to cam live] because of fear that law-enforcement was at the other end of his chats, i.e., to refute that chats were simply sexual fantasy).[3]

Boiled down, Beckman's remaining Rule 404(b) argument is that there was insufficient evidence that the other acts described in the chats occurred because words alone do not prove that an act occurred. He cites no authority but, assuming the issue is preserved, a defendant's statements about his involvement in other criminal activities are admissible under Rule 404(b) to show knowledge and absence of mistake where, as here, the statements concerned acts similar to those for which the defendant is prosecuted and that occurred during the same general time frame. *United States v. Terry*, 729 F.2d 1063, 1069–70 (6th Cir. 1984).

---

[3] The Government relied on Fed. R. Evid. 404(b) and 414 to support admission of chats that tended to show other instances of Beckman producing, possessing, or distributing child pornography or attempting to do so.

Beckman also claims that the chats with unidentified persons constituted inadmissible hearsay. But Beckman concedes he is jimmyab2010; thus his portion of the chats were admissions of a party opponent, Fed. R. Evid. 801(d)(2)(A), not hearsay. The other parties' portions of the chats were properly admitted to provide context to Beckman's own statements.[4] *See United States v. Henderson*, 626 F.3d 326, 336–37 (6th Cir. 2010) (observing that statements Henderson made during recorded telephone conversations were non-hearsay admissions under Fed. R. Evid. 801(d)(2)(A), and the statements made by others were not admitted to show the truth of the matter asserted, but to provide context for Henderson's admissions).

Beckman waived his remaining claims–that the district court erroneously admitted chats under the co-conspirator statement and adoptive-admission theories–by failing to identify any chat admitted on either ground.[5] *United States v. Keller*, 498 F.3d 316, 326 (6th Cir. 2007).

## IV. Admission of Spoliation Evidence

Beckman next challenges the admission of his alleged attempts to destroy a flash drive, and to have his work-assigned Lenovo laptop and Blackberry cell phone wiped clean. He argues that this evidence was irrelevant because the Government failed to lay the necessary foundation, i.e., that he possessed the flash drive (and that it existed at all), and that he attempted to have the Lenovo wiped clean *after* he was notified of the investigation. Lastly, Beckman argues that the Government presented "convoluted evidence" that he tried to have the contents of his Blackberry wiped clean.

---

[4] For example, during chats between Beckman and openmindedsinglemommy Beckman said he had "jerked [his son] on cam for a lady/mom who was masturbating." Openmindedsinglemommy asked Beckman if she could see "your boy on cam," and, after she sent Beckman photos, he asked, "you want to see sons cock on cam?" Openmindedsinglemommy wrote, "I can see you . . . cool."

[5] The record is clear that, in the end, the Government did not rely on the co-conspirator statement exception as a basis for admission of any chats.

The district court did not abuse its discretion.[6] *United States v. Jenkins*, 593 F.3d 480, 484 (6th Cir. 2010). The Government introduced no evidence that Beckman attempted to destroy a flash drive; rather, the expert who performed a forensic analysis of the Lenovo testified that user J_Beckman had accessed an external drive that held a folder named "Jim," and that folder contained videos with file names suggesting child pornography. Beckman did not object, and admitted having a number of external drives and keeping pornography on them at times.

As to Beckman's work-assigned Lenovo laptop, the Government laid the necessary foundation, contrary to his contention. Trooper McDonald went to Beckman's home and collected evidence and items including his Blackberry, and the two then went to Beckman's workplace, where Beckman turned over an HP computer, but not the Lenovo laptop. The record is clear that *after* Trooper McDonald left Beckman's office, Beckman took the Lenovo to his employer's IT department to have it scanned for viruses. The record is also clear that after police seized his Blackberry, which he had used to communicate with Hughes, Beckman falsely reported the device lost or stolen to the IT department so that its contents would be wiped clean remotely, as IT staff had told Beckman it would.

The evidence that after Trooper McDonald left his office, Beckman took the Lenovo to the IT department to be scanned for viruses, and falsely reported to IT that his Blackberry was lost or stolen so that IT would wipe its contents clean was relevant and properly admitted. *United States v. Blackwell*, 459 F.3d 739, 768 (6th Cir. 2006) (spoliation evidence is admissible to show consciousness of guilt). And, the district court properly instructed the jury on use of this evidence.

---

[6] Beckman's "Anticipated Objections to Proposed Government Evidence Contained in its Trial Brief" included an objection to admission of his alleged attempts to conceal or destroy evidence as irrelevant and inadmissible under Fed. R. Evid. 401, 402.

### V. Admission of Summary Exhibits under Fed. R. Evid. 1006

Beckman challenges the admission of summaries created by the Government of alleged Yahoo! Messenger conversations, arguing that the underlying documents were not so voluminous that they could not be conveniently examined in court and that the summaries were prejudicial and inaccurate because they emphasized so-called "video calls."

Review of the admission of summary exhibits is for abuse of discretion. *United States v. Jamieson*, 427 F.3d 394, 409 (6th Cir. 2005). As pertinent here, admission of the summaries under Fed. R. Evid. 1006 is proper if the Government shows that the underlying data is so voluminous that it cannot be conveniently examined in court and the summary is accurate and presented in a non-prejudicial manner. *Id.* "Summary testimony is appropriate to aid the jury in the examination of testimony and documents in evidence"; however, the summary "should be accompanied by a limiting instruction which informs the jury of the summary's purpose and that it does not constitute evidence." *United States v. Vasilakos*, 508 F.3d 401, 412 (6th Cir. 2007).

### A.

Forty pages of records obtained from Yahoo! were in a raw format and contained technical data that included metadata.[7] The underlying raw data was admitted into evidence and was available for the jury to examine. Beckman did not object to the introduction of the underlying raw data but, without citing authority, argued that, to be voluminous, the data had to be "unwieldy and virtually impossible . . . to present."

Below is a sample taken from one of the forty pages of raw data:

"NSTANT"},{"from":"sttace1324","txt":"no","ts":133930280,"cloud_id":0,"clt_
msg_context":"896f9057804d6ddd45e4a2ad90277cbd","etype":"INSTANT"},{"
from":"jimmyab2010","txt":"He was watching and jerking some","ts":1333930
288,","clt_msg_context":"XLxs8ujp/n0aDeeysi15kGnFQXjw4g==","etype":"c7b

---

[7] Metadata is "data that describes and gives information about other data." Oxforddictionaries.com (2015 Oxford University Press).

fc5720f171418f0e8f172faa15767","etype":"INSTANT"},{"from":"sttace1324","
ts",133393026,"call_duration":0,"event":"MISS","cal1_type":"PC2PC","call_voi
cemail":0,"etype":"VIDEO"},{"from":"sttace1324","txt":"try sendin it again",
"ts":1333930318,"cloud_id":0,"clt_msg_context":"eb09833fd92c40191f8ba5d39
933e89","etype":"INSTANT"},{"from":"sttace1324","ts":133393062,"call
duration":88,"event":"IN","call_type":"PC2PC","call_voicemail":0,"etype":"VI
DEO"},{"from":"sttace1324","txt":"is he hard 2 bb","ts":1333930471,"cloud
_id":0,"clt_msg_context":"65788f25b78a125946ceab381abf58ec","etype":"INST
ANT"},{"from":"sttace1324","see if u can get him to compare for a
lil","ts":1333930485,"cloud_id":0,"clt_msg_context":"3f159d4c8da8eaeb607b47
b5f24abf68","etype":"INSTANT"},{"from":"jimmyab2010","txt":"He did","ts":

PID 388.

Rule 1006 requires only that the in-court examination of the underlying material be inconvenient, and the need for a summary increases when, as here, the underlying material involves hard to understand technical data. *See United States v. Campbell*, 845 F.2d 1374, 1381 (6th Cir. 1988). The densely packed single-spaced pages of text consisting of abbreviations, numbers, and words without clear beginning or end would be incomprehensible to most laypersons and jurors; thus the summaries were properly admitted to assist the jury in understanding the raw data. *Id.*

**B.**

Beckman also argues that the summaries were insufficiently accurate because they emphasized video calls. But the Government's own expert testified that video calls were nothing more than a Yahoo! Messenger tag that did not necessarily establish that a web cam was used during the call.

Beckman cites three pages of his counsel's voir dire examination of FBI Agent Kovac to support his inaccuracy argument. When asked who ensured that the summaries were accurate Agent Kovac responded, "I looked at every single one." When asked the primary purpose of the summaries, Kovac answered, "To show when video and voice calls are completed or attempted."

PID 2392. When Beckman's counsel finished Kovac's voir dire examination, the following colloquy took place:

> MR. MARKOU: [S]ubject to the objection I made prior to trial about the summaries, I have, I think they have laid an otherwise sufficient foundation today.
>
> THE COURT: I think you need to put that briefly on the record, your exact objection, Mr. Markou.
>
> MR. MARKOU: My objection before trial was that these were not sufficiently voluminous to warrant a summary exhibit, and there was a second issue about accuracy. The accuracy one was still left for the Court to decide. The Court had already made a decision on the voluminous nature of this. I just want to make sure I reiterate that particular objection regarding the accuracy. I think she has testified to, to at least some steps that were taken to ensure the accuracy.
>
> THE COURT: Thank you. Those exhibits are admitted.

PID 2393. Because Beckman advances no specifics regarding the alleged inaccuracies of the summaries and Kovac's testimony supports that the summaries are accurate, admission of the summaries was not an abuse of discretion.

## VI. As-Applied Challenge to Sexual Exploitation and Coercion and Enticement Statutes

Beckman contends that his attempt convictions (under 18 U.S.C. §§ 2251 and 2242(b)) cannot stand because they were "based on speech alone." He challenges the statutes as applied. "An as-applied challenge consists of a challenge to the statute's application with respect to the party before the court." *United States v. Abdulmutallab*, 739 F.3d 891, 905 (6th Cir. 2014). Our review is de novo. *United States v. Watkins*, 509 F.3d 277, 280 (6th Cir. 2007).

### A.

Section 2251, titled "Sexual exploitation of children," provides in pertinent part:

(a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, . . . with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished . . . if such person knows or has reason to know

> that such visual depiction will be transported or transmitted using any means or facility of interstate . . . commerce . . . , if that visual depiction was produced or transmitted using materials that have been . . . transported in or affecting interstate . . . commerce by any means, including by computer . . . .

18 U.S.C. § 2251(a).

Section 2422, titled "Coercion and enticement," provides in pertinent part:

> (b) Whoever, using . . . any facility or means of interstate . . . commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense, *or attempts to do so*, shall be fined . . . and imprisoned . . . .

18 U.S.C. § 2422(b) (emphasis added).

Beckman relies principally on *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), which struck down statutory provisions[8] that criminally proscribed *virtual* child pornography, that is, sexually explicit images that appear to depict minors but were produced without using any real children. The *Ashcroft* Court concluded that such prohibition "abridges the freedom to engage in a substantial amount of lawful speech" that is neither obscene nor child pornography. 535 U.S. at 240.

Beckman maintains that because the jury acquitted him of actually sending live images of child pornography via the internet, only his words remain; if virtual child-pornography images cannot be prosecuted, he argues, neither can his graphic sexual speech. But *Ashcroft* is of no help to Beckman, as it neither supports that proposition nor addresses whether criminalizing attempted sexual exploitation or attempted coercion and enticement of a minor to engage in sexual activity offends the First Amendment. *See, e.g.*, *United States v. Kimler*, 335 F.3d 1132,

---

[8] At issue was the prohibition of virtual child pornography in the Child Pornography Prevention Act of 1996, 18 U.S.C. § 2251 *et seq.* Section 2256(8)(B) prohibited any visual depiction that is or appears to be of a minor engaging in sexually explicit conduct. Section 2256(8)(D) defined child pornography to include "any sexually explicit image that was . . . distributed in such a manner that conveys the impression" that it depicts a minor engaging in sexually explicit conduct. *Ashcroft*, 535 U.S. at 241–42.

1141 (10th Cir. 2003) (holding of *Ashcroft* is limited to the constitutionality of §§ 2256(8)(B) and (D) of the Child Pornography Prevention Act (CPPA), that is, the CPPA definitions that prohibited possessing and distributing images that were not produced using real children); *see also United States v. Richardson*, 304 F.3d 1061, 1063–64 (11th Cir. 2002).

The district court properly denied Beckman's pre-trial motion to dismiss the superseding indictment's attempt counts under the First Amendment on the basis that Beckman was not arguing that the First Amendment permitted him to engage in the charged conduct, but rather, that he did not commit the charged offenses.

Beckman's conviction of ten counts of attempted sexual exploitation of a child, 18 U.S.C. § 2251, required a finding that Beckman intended to produce child pornography and took a substantial step toward doing so. *See United States v. Sims*, 708 F.3d 832, 835 (6th Cir. 2013) (noting that to convict of attempted production of child pornography, the government must show beyond a reasonable doubt that the defendant specifically intended to create child pornography and took a substantial step toward creation of child pornography.) The conviction of Count 5, attempted coercion and enticement of a child, 18 U.S.C. § 2422(b), required a finding that Beckman intended to coerce and entice a child and took a substantial step towards doing so. *Id.* As the Government asserts, neither type of conduct is protected by the First Amendment. *See New York v. Ferber*, 458 U.S. 747, 758 (1982) (noting that the legislative judgment of virtually all states and the United States proscribing the production of child pornography easily passes muster under the First Amendment.); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000)[9] (concluding that section 2422(b) only applied to those who

---

[9] This court rejected a challenge to § 2242(b) as infringing constitutionally protected speech in *United States v. Bailey*, where the defendant argued that the statute "requires the specific intent to commit illegal sexual acts rather than just the intent to persuade or solicit the minor victim to

knowingly persuaded or enticed, or attempted to persuade or entice, minors, and thus affected only those with intent to target minors, and any limited or incidental effect on speech did not infringe on constitutionally protected rights of adults.)  Other circuits have similarly held.  *See e.g.*, *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting any other type of crime."); *United States v. Meek*, 366 F.3d 705, 721 (9th Cir. 2004) (rejecting a First Amendment overbreadth as-applied challenge to § 2422(b) when applied to situations involving an actual adult, observing that "there is no otherwise legitimate speech jeopardized by § 2422 because the statute only criminalizes conduct, i.e., the targeted inducement of minors for illegal sexual activity.  Here, speech is merely the vehicle through which a pedophile ensnares the victim.").

**B.**

Beckman also challenges his conviction on Count 5, attempted coercion and enticement of a child, 18 U.S.C. § 2422(b), on the basis that no actual child was involved.  Count 5 involved Schrode, who pretended that he was a woman with a six-year-old daughter, using screen names including "pizzagirl12891."  Chats between Schrode and jimmyab2010 were admitted at trial and Schrode testified that he chatted with jimmyab2010 20 to 30 times, sent him child pornography, and received live transmissions of jimmyab2010 giving oral sex to his son.  Schrode told jimmyab2010 during a chat that jimmyab2010 "can tell me what to do when I get in

---

commit sexual acts," and that "to hold otherwise, would criminalize mere sexual banter on the internet, or would criminalize content-based speech in violation of the First Amendment."  228 F.3d 637, 638 (6th Cir. 2000).  This court concluded that § 2242(b) only applied to those who knowingly persuaded or enticed, or attempted to persuade or entice, minors, and thus affected only those with intent to target minors, and any limited or incidental effect on speech did not infringe on constitutionally protected rights of adults.  "Put another way, the Defendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts."  *Id*. at 639.

the room with my daughter," and jimmyab2010 responded, "likewise," and "you can pull pants down like I will my son[,] I stroke him you finger her some."

Over Beckman's objection, the district court instructed the jury that an actual child need not be involved, in accordance with *United States v. Hackworth*, 483 F. App'x 972, 976–78 (6th Cir. 2012) ("the absence of an actual minor does not preclude Hackworth's conviction for violating 18 U.S.C. § 2422(b)"), and *United States v. Hart*, 635 F.3d 850, 855 (6th Cir. 2011) (to convict under § 2422(b), the jury had to unanimously agree that Hart used interstate commerce in an attempt to knowingly persuade an individual under the age of 18 to engage in sexual activity and "that Hart believed that such an individual was less than 18.")

Beckman claims that *Hackworth* contravenes *Ashcroft*, but *Ashcroft* nowhere addresses whether an actual minor is required to convict under § 2422(b) or whether attempting to coerce and entice a minor constitutes protected speech. In fact, the *Ashcroft* Court observed that the issue before it did not involve attempt, incitement, solicitation, or conspiracy. 535 U.S. at 253.

This court has held that an actual minor need not be involved in order to convict under § 2422(b), *Hart*, 635 F.3d at 855; *Hackworth*, 483 F. App'x at 976–78, as have other federal courts of appeals, *see United States v. Slaughter*, 708 F.3d 1208, 1215 (11th Cir. 2013) ("a violation of § 2422(b) does not require an actual minor due to its attempt clause."); *United States v. Davis*, 165 F. App'x 586, 588 (10th Cir. 2006) ("we reject Davis's argument that § 2422(b) is unconstitutionally overbroad because it encompasses prosecutions for adults posing as minors,"; . . . because an actual minor victim is not required for an attempt conviction under § 2422(b).); *Meek*, 366 F.3d at 718–19 ("The attempt provision [of § 2422(b)] is no different than an attempted solicitation of prostitution, where the criminal conduct is the knowing effort to solicit an individual for prostitution. That the individual turns out to be a decoy undercover officer does

not vitiate the criminal conduct"). Beckman fails to support his argument that an actual child must be involved in order for an attempt conviction under § 2422(b) to stand and his as-applied challenge to sections 2251 and 2422(b) fails.

## VII.

Beckman contends that the evidence showed that sexually abusive conduct occurred only in Michigan, and that only *a description of the abuse* in words was transmitted over the internet, and thus that his attempt convictions on Counts 1 through 5 and 7 through 12 must be reversed because the Government failed to prove that the Internet was used to transmit, via webcam, child pornography. This is a sufficiency-of-the-evidence argument. *See United States v. Riddle*, 249 F.3d 529, 536 (6th Cir. 2001) (observing that the interstate commerce requirement does not affect subject matter jurisdiction, but rather, 'is a challenge to one element of the government's case and is therefore considered a claim about the sufficiency of the evidence"). This court's review is de novo, reviewing the evidence in the light most favorable to the prosecution and determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Boring*, 557 F.3d 707, 710–11 (6th Cir. 2009).

## A.

The interstate commerce element was established through the testimony of Hughes and Schrode and chats admitted through Special Agent Kovac and others. Schrode told Beckman he lived out of state, Beckman concedes using equipment manufactured outside Michigan, and the Yahoo! data showed that Beckman used the video feature while sexually abusing Child 1 and transmitting live to both Hughes and Schrode. Beckman's claim that his conduct occurred only in Michigan is meritless. *See United States v. Napier*, --- F.3d ---, No. 14-3492, 2015 WL

16

2386505, at *9–12 (6th Cir. May 20, 2015). Because Beckman fails to show that the record is devoid of evidence pointing to guilt, this claim fails. *United States v. Tragas*, 727 F.3d 610, 617 (6th Cir. 2013) (when reviewing criminal conviction for sufficiency, all reasonable inferences and resolutions of credibility are made in the jury's favor).

**B.**

Beckman also claims that on the attempt charges the jury should have been instructed that there must be proof that the crime "affected" interstate commerce and that Beckman used interstate commerce to commit the attempt. Because Beckman objected below on different grounds than he advances on appeal,[10] review is for plain error. *United States v. Semrau*, 693 F.3d 510, 526–27 (6th Cir. 2012) (citing Fed. R. Crim P. 30(d)). Plain error in the context of instructional error "requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *Semrau*, 693 F.3d at 528.

The jury instructions accorded with this circuit's Pattern Criminal Jury Instructions §§ 16.01, 16.09, 5.01 (6th Cir. 2013), and were consistent with the language of §§ 2251(a) and 2422(b). The jury was instructed that it had to find that Beckman intended to commit the underlying offense and committed an overt act that was a substantial step toward achieving that objective, and of the interstate commerce element. And, Beckman concedes that he used equipment manufactured outside of Michigan, and chatted with individuals who were outside of Michigan via the internet. There was no plain instructional error.

**VIII.**

Beckman also challenges the district court's jury instruction on the crime of enticing or coercing a minor to commit a sexual act because it provided that such could be done through an

---

[10] Beckman objected to Jury Instruction No. 4, Sixth Circuit Pattern Criminal Jury Instructions §§ 16.01 & 5.01 (6th Cir. 2013); 18 U.S.C § 2251(a), which covered counts 1 through 4 and 6 through 12–using a minor to engage in sexually explicit conduct to produce a visual depiction or attempting to do so.

intermediary. Review of this preserved claim is de novo. *United States v. Reichert*, 747 F.3d

445, 451 (6th Cir. 2014).

> The district court instructed the jury in pertinent part that the Government had to prove:

> that the defendant knowingly persuaded, induced, enticed or coerced an individual under the age of 18 to engage in unlawful sexual activity. It's not necessary for the government to prove that the defendant communicated directly with a minor. Dealing with an adult intermediary for the purpose of enticing or coercing the minor is sufficient.

PID 2816.

This court rejected a similar challenge in *United States v. Harmon*, 593 F. App'x 455,

467 (6th Cir. 2014), holding that an instruction stating that it is sufficient for the Government to

prove the defendant attempted to persuade, etc., a minor by communicating with someone he

believed was the minor's parent, guardian, or someone else likely to have influence over the

minor was "an accurate representation of the law," and citing six federal courts of appeals

decisions in accord. We follow *Harmon* and conclude there was no instructional error.[11]

## IX.

Beckman claims that there was insufficient evidence supporting his convictions of

distributing and receiving child pornography (Counts 13-16) because the Government did not

prove identity or that his actions affected interstate commerce. Beckman moved for judgment of

acquittal after the Government's case-in-chief on the basis of insufficient evidence that he

received or distributed images in 2011 but did not renew the motion at the close of all the

evidence; thus review is for plain error. *Tragas*, 727 F.3d at 617.

Evidence at trial showed that Beckman distributed child pornography via the internet

through Yahoo! Messenger. Hundreds of images of child pornography were found on the

---

[11] Because we find no error we need not address Beckman's claim that cumulative error warrants reversal of his convictions.

Lenovo laptop in a photo-sharing folder located in the "all users" folder. Kraus testified that some of these images were received and distributed via the internet in November 2011 using Yahoo! Messenger.

As to identity, there was ample evidence that Beckman received and distributed child pornography. Beckman admitted downloading Yahoo! Messenger on the Lenovo and admitted trading photos using Messenger, although he claimed the children were clothed, and also admitted that he saw child pornography during the trading sessions. Kraus examined all user accounts on the Lenovo and testified that only Beckman's profile had evidence of activity on Yahoo! Messenger. Kraus found photos of Beckman and his family on the Lenovo and testified that those photos had been distributed through Yahoo! Messenger and were in the same photo-sharing folder that contained subfolders of child pornography.

The record is not devoid of evidence pointing to guilt, *id.*; thus Beckman's sufficiency claim fails.

## X.

Remaining is the double-jeopardy argument Beckman raises for the first time in his Reply Brief, which is waived, *United States v. Moore*, 376 F.3d 570, 576 (6th Cir. 2004), and, in any event, fails on the merits. Relying on *Yeager v. United States*, 557 U.S. 110 (2009), Beckman asserts that the doctrine of collateral estoppel, inherent in the Double Jeopardy clause, precludes his convictions for attempt when he was acquitted of the completed offense. He bases this assertion on the questionable premise that the jury necessarily found facts that are inconsistent with his being guilty of the attempts. Even accepting that premise, Beckman cites no case to support the novel proposition that collateral estoppel applies in a single trial. *Yeager* involved a new trial after a previous jury hung on some counts and acquitted on others. The

second trial is the factor that triggered double jeopardy concerns. *Yeager*, 557 U.S. at 115–16, 118. Also misplaced is Beckman's reliance on *Ashe v. Swenson*, as it involved an acquittal followed by a second prosecution for armed robbery, again implicating the protection against double jeopardy. 397 U.S. 436, 443–46 (1970).

When *a single jury* renders verdicts of both conviction and acquittal, as in the instant case, a defendant's sole recourse is to challenge the sufficiency of the evidence on the counts of conviction. *United States v. Powell*, 469 U.S. 57, 64–68 (1984); *see also United States v. Ruiz*, 386 F. App'x 530, 534 (6th Cir. 2010) (affirming district court's rejection of defendant's motion for judgment of acquittal or new trial where jury found her guilty of traveling in interstate commerce with intent to promote or facilitate an unlawful activity but acquitted her of the alleged unlawful activity, because *Powell* directs that a defendant's "avenue of relief, if any, is through a sufficiency of the evidence evaluation."); *United States v. Smith*, 749 F.3d 465, 498 (6th Cir. 2014) (rejecting Government's cross-appeal where jury acquitted defendant of conspiring to commit mail fraud but convicted on substantive charge of committing mail fraud and district court reversed conviction on insufficiency grounds (not because of inconsistent verdicts), noting "[i]nconsistent jury verdicts are unreviewable except for 'a situation in which a defendant receives two guilty verdicts that are logically inconsistent'") (quoting *Ruiz*, 386 F. App'x at 533). Beckman's unpreserved argument fails on the merits.

For these reasons, we AFFIRM Beckman's convictions.