RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0030p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

CHAD CHRISTOPHER TAYLOR,

*Defendant-Appellant*.

No. 25-5408

Appeal from the United States District Court for the Eastern District of Kentucky at Covington.
No. 2:24-cr-00006-1—David L. Bunning, District Judge.

Decided and Filed:  January 30, 2026

Before:  DAVIS, RITZ, and HERMANDORFER, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Steven N. Howe, STEVEN N. HOWE, P.S.C., Williamstown, Kentucky, for Appellant.  Charles P. Wisdom Jr., Carlton S. Shier, IV, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

RITZ, Circuit Judge.  A grand jury indicted Chad Christopher Taylor for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Taylor moved to dismiss the indictment on Second Amendment grounds, but the district court denied the motion.  Taylor pled guilty and now appeals the district court's denial of his motion to dismiss, claiming that § 922(g)(1) is unconstitutional as applied to him.  Because Taylor has not demonstrated that he is not dangerous, we affirm.

I.

A.

On November 29, 2023, law enforcement officials in Boone County, Kentucky, received a call about an open door at Taylor's townhouse.  When officers responded, they saw an open garage door and an open door leading from the garage to the upper level of the two-story townhouse.  Fearing a burglary might be in progress, officers entered the residence but found no one.  The officers smelled freshly burnt gunpowder and saw four bullet holes in the walls.

Later that day, a detective searched Taylor's townhouse pursuant to a search warrant and recovered four spent 9mm shell casings, two loaded Glock 19 magazines, a holster, and ammunition.  Officers located Taylor at a hotel and questioned him about the bullet holes.  Taylor claimed that he was at his townhouse when the shots were fired, but said he did not fire the shots.  Taylor also admitted to officers that he had used methamphetamine and "[saw] people watching him that others can't see."  RE 89, Detention Hr'g Tr., PageID 330.  Taylor agreed to go to the hospital for a mental health evaluation and was later released.

Officers also obtained a search warrant for Taylor's vehicle, where they found one live 9mm round but no firearm.  The next day, officers obtained a second search warrant for Taylor's vehicle, and they found a baggie containing approximately 6.3 grams of methamphetamine and more live 9mm ammunition.

Later that day, officers received a report that Taylor had returned home, was acting erratically, and told a neighbor that "there were people in his ceiling or in his walls trying to get him."  *Id.* at 333.  Officers responded, and after several knocks on the front door, Taylor stepped outside.  The officers searched Taylor and found a Glock 19 in one pocket and a loaded 9mm magazine in the other.  Ballistics testing showed that the firearm was the one that fired the four spent shell casings inside Taylor's townhouse.

B.

A grand jury indicted Taylor for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Taylor had two 2012 felony convictions for drug trafficking under Ohio

law. He also had a felony intimidation conviction and a misdemeanor domestic battery conviction, both in violation of Indiana law, from 2004. A magistrate judge initially ordered that Taylor be detained pretrial because Taylor's possession of a firearm presented "a different, additional danger consideration given Taylor's substance abuse history." RE 22, Conditional Order of Detention, PageID 52. The court also noted Taylor's "long history of severe substance abuse," most recently involving methamphetamine, and determined that Taylor posed "an unacceptable risk of danger to the community or another" based on his possession of "a firearm while experiencing drug-induced erratic, paranoid, hallucinating behavior[.]" *Id.* Still, the court determined that certain conditions could be "crafted to allow for his release despite this danger[.]" *Id.* at 53. Taylor agreed to abide by the court's conditions, and he was released pending trial.

Taylor moved to dismiss the indictment, arguing that § 922(g)(1) was unconstitutional facially and as applied to him. The district court denied the motion, holding that Taylor was dangerous based on his felony drug trafficking convictions under *United States v. Stone*, 608 F.3d 939 (6th Cir. 2010), where we said that "drug trafficking is a serious offense that, in itself, poses a danger to the community." *Id.* at 947 n.6. The district court therefore found "that § 922(g)(1) is constitutional both facially and as applied to [Taylor] who has prior felony drug trafficking convictions." RE 53, Mem. Op. and Order, PageID 159.

Taylor later pled guilty to one count of being a felon in possession of a firearm but reserved his right to appeal the district court's denial of his motion on constitutional grounds. Taylor remained on pretrial release subject to the "previously imposed conditions of release pending sentencing." RE 66, Minute Entry, PageID 202.

At sentencing, the district court explained that Taylor's use of a loaded firearm while hallucinating created a "dangerous situation." RE 92, Sent'g Hr'g Tr., PageID 519. When crafting Taylor's sentence, the district court sustained Taylor's objection to an enhancement under United States Sentencing Guidelines §2K2.1(b)(6)(B) for use of a firearm in connection with another felony, namely first-degree wanton endangerment under Kentucky law (for firing shots inside the townhouse). The court fixed Taylor's guideline range at 30 to 37 months and imposed a sentence of 30 months' imprisonment. The court allowed Taylor to self-surrender

after sentencing because he had "been compliant with all conditions of release."  RE 92, Sent'g Hr'g Tr., PageID 527; *see* R. 80, Judgment, PageID 257.

Taylor now appeals the denial of his motion to dismiss the indictment.

## II.

## A.

We review de novo the denial of a motion challenging the constitutionality of a federal statute.  *United States v. Morton*, 123 F.4th 492, 495 (6th Cir. 2024) (citing *United States v. Napier*, 233 F.3d 394, 397 (6th Cir. 2000)).  After the district court denied Taylor's motion, this court issued new caselaw governing Second Amendment challenges to firearms regulations, including 18 U.S.C. § 922(g)(1).  We consider the parties' arguments in light of this new caselaw.

## B.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  And although the Second Amendment protects the "individual right" of "law-abiding citizens" to keep weapons "in common use" "for lawful purposes," such as self-defense, that right "is not unlimited." *Dist. of Columbia v. Heller*, 554 U.S. 570, 625-27 (2008).

Any limit on the right must be "consistent with this Nation's historical tradition" of regulating firearms.  *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022); *see also United States v. Rahimi*, 602 U.S. 680, 692 (2024).  The limit at issue here—§ 922(g)(1)— prohibits "any person . . . who has been convicted . . . of[] a crime punishable by imprisonment for a term exceeding one year" from possessing "any firearm or ammunition[.]"  Indeed, "longstanding prohibitions on the possession of firearms by felons," like § 922(g)(1), are "presumptively lawful." *Heller*, 554 U.S. at 626, 627 n.26; *Rahimi*, 602 U.S. at 699.

In *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), we applied *Bruen* and *Rahimi* and concluded that "governments may use class-based legislation to disarm people it believes are dangerous, so long as members of that class have an opportunity to show they [are not]." *Id.* at

661-62. We further held that "§ 922(g)(1) is constitutional on its face and as applied to dangerous people." *Id.* at 662-63. In an as-applied challenge like the one before us,[1] the defendant bears the burden of showing that "he himself is not actually dangerous." *Id.* at 663.

Even though the district court did not have the benefit of *Williams*, Taylor does not argue that the court failed to make a dangerousness assessment. Instead, he argues that the district court determined he was not dangerous when it released him pretrial and after he pled guilty, so he cannot now be found dangerous under *Williams*. We have not previously addressed whether the dangerousness inquiries for purposes of pretrial detention and for taking away a felon's right to possess a firearm are one and the same.

On one hand, the Bail Reform Act, 18 U.S.C. § 3142, provides that a person may be detained before trial "only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'" *Stone*, 608 F.3d at 945 (quoting 18 U.S.C. § 3142(e)). Thus, the default "is that a defendant should be released pending trial." *Id.* So—leaving aside flight-risk issues—even if a court determines a defendant is dangerous, he still may be released unless the government shows that "no conditions of release can assure . . . the safety of the community." *Id.* at 946. When deciding whether a defendant is dangerous for purposes of pretrial detention, the court considers "the nature and circumstances of the offense charged"; "the history and characteristics of the person, including[] the person's . . . criminal history"; and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g); *Stone*, 608 F.3d at 946.

On the other hand, *Williams* requires the court to "make fact-specific dangerousness determinations after taking account of the unique circumstances of the individual, including details of his specific conviction," when deciding whether a defendant can be prohibited from possessing a firearm under § 922(g)(1). 113 F.4th at 663. In doing so, the "court[] may evaluate a defendant's entire criminal record—not just the specific felony underlying his [§] 922(g)(1) prosecution." *Id.* The court "can accept prior convictions without an evidentiary hearing or jury

---

[1]Taylor abandoned his facial challenge to 18 U.S.C. § 922(g)(1) on appeal.

fact finding" and may review the uncontested contents of a presentence report.  *Id.* at 662.  And the court is "not confined to the fact of conviction alone, but may consider how an offense was committed."  *Morton*, 123 F.4th at 499.

The government points to a few district court cases examining the relationship between the dangerousness inquiry for pretrial detention purposes and the inquiry for purposes of § 922(g)(1).  In these cases, courts determined that the dangerousness inquiry for purposes of pretrial detention is different from the one for § 922(g)(1).  *See United States v. Hamilton*, 791 F. Supp. 3d 751, 760-61 (E.D. Mich. 2025); *United States v. Jennings*, 754 F. Supp. 3d 763, 771 (E.D. Mich. 2024); *see also United States v. Gray*, No. 23-20546, 2024 WL 5059144, at *2 n.6 (E.D. Mich. Dec. 10, 2024) (citing the reasoning in *Jennings*); *cf. United States v. Harris*, No. 24-45, 2024 WL 5090457, at *3 (E.D. Ky. Dec. 12, 2024) (noting that the *Williams* court "did not equate whether a defendant is entitled to pretrial release with whether the defendant may be disarmed under the Second Amendment").

We agree.  Not only do the inquiries implicate different liberty interests, but they also implicate different legal presumptions: a presumption runs against pretrial detention for most crimes, *Stone*, 608 F.3d at 945, but under § 922(g)(1), a presumption runs in favor of restricting felons' access to firearms, *Williams*, 113 F.4th at 657.  *See Hamilton*, 791 F. Supp. 3d at 760; *Jennings*, 754 F. Supp. 3d at 771.  As such, the district court's dangerousness assessment for purposes of pretrial detention does not automatically resolve whether the defendant is dangerous for purposes of § 922(g)(1).  *Cf. Williams*, 113 F.4th at 657 (noting that district courts must assess whether a felon is dangerous for purposes of § 922(g)(1) even though they may separately "determine whether a given defendant is dangerous in multiple situations," such as for pretrial detention and sentencing).

Even if that were not the case, however, Taylor's overarching argument on appeal—that the district court did not find him dangerous—fails.  When considering whether to release Taylor pretrial, a magistrate judge determined that Taylor's possession of a firearm presented "a different, additional danger consideration given Taylor's substance abuse history."  RE 22, Conditional Order of Detention, PageID 52.  Noting Taylor's "long history of severe substance abuse," most recently involving methamphetamine, the court determined that Taylor posed "an

unacceptable risk of danger to the community or another" based on his possession of "a firearm while experiencing drug-induced erratic, paranoid, hallucinating behavior[.]" *Id.*

The court nonetheless determined that certain conditions could be "crafted to allow for his release despite this danger[.]" *Id.* at 53. As such, the court's decision to release Taylor was not unbounded—rather, release followed only after Taylor agreed to abide by the court's conditions. Notably, those conditions required "that [Taylor] not commit a Federal, State, or local crime"—which, in Taylor's case, included violating § 922(g)(1)'s prohibition on felons' firearm possession. 18 U.S.C. § 3142(c)(1). By incorporating that condition, the district court's conclusion that Taylor's dangerousness could be mitigated specifically contemplated that Taylor would be unarmed. And that the district court allowed Taylor to remain on bail pending sentencing and to self-surrender speaks to Taylor's ability to obey the conditions set by the court, not his alleged lack of dangerousness. Thus, Taylor has not shown that § 922(g)(1) was unconstitutional as applied to him simply because the court allowed his release.

C.

Having determined that the *Williams* dangerousness inquiry is different from the one for pretrial detention, we must determine whether Taylor has met his burden of showing he is not dangerous for purposes of § 922(g)(1). We apply *Williams* to the facts here, looking first at Taylor's offense conduct and then his criminal history.

*Offense conduct.* While under the influence of methamphetamine, Taylor began hallucinating and claimed to "see[] people watching him that others can't see." RE 89, Detention Hr'g Tr., PageID 330. Holes from four shots were then found inside his townhouse. Although Taylor claimed that he did not fire the shots, officers encountered Taylor in the townhouse the following day, after he told a neighbor that "there were people in his ceiling or in his walls trying to get him." *Id.* at PageID 333. When officers arrived at Taylor's home, they patted down Taylor and found a Glock 19 in one pocket and a loaded 9mm magazine in the other. As the district court noted, Taylor's handling and firing of the firearm inside his townhouse created "a dangerous situation" made "even worse" by Taylor's hallucinations. RE 92, Sent'g Hr'g Tr., PageID 519.

Taylor points out that the district court sustained his objection to a sentencing enhancement under U.S.S.G. §2K2.1(b)(6)(B) for use of a firearm in connection with a felony (*i.e.*, wanton endangerment for shooting four rounds inside his home).  But offense conduct is not the only consideration in determining whether a defendant is dangerous for purposes of § 922(g)(1), and we have found similar circumstances warranted a finding of dangerousness.  *See United States v. Tucker*, No. 24-4088, 2025 WL 2915881, at *4 (6th Cir. Oct. 14, 2025) (finding defendant dangerous where crimes included his shooting "several rounds into an occupied home" (citation modified)).

*Criminal history.*  Moreover, Taylor's criminal history demonstrates that he is dangerous under *Williams*.  *Williams* outlined three categories of criminal offenses.  First, there are "crimes against the person," which include "murder, rape, assault, and robbery."  *Williams*, 113 F.4th at 658.  Second, there are crimes that "do not always involve an immediate and direct threat of violence against a particular person" but "may nonetheless pose a significant threat of danger." *Id.* at 659.  The court cited drug trafficking and burglary as examples in this second category because they "often lead[] to violence."  *Id.*  Third, there are crimes that "cause no physical harm to another person or the community," but many of these crimes do not make a person dangerous. *Id.*  A person in either of the first two categories "will have a very difficult time, to say the least, of showing he is not dangerous."  *Id.* at 663.

Taylor's felony drug trafficking convictions fall within the second *Williams* category. Therefore, the district court properly concluded that Taylor was dangerous based on his prior felony drug trafficking convictions.

Taylor claims that he is a "nonviolent felon," but *Williams* does not require violence to show dangerousness.  RE 36, Mot. to Dismiss, PageID 88; *see Williams*, 113 F.4th at 659; *United States v. Crawford*, No. 23-5429, 2025 WL 3496999, at *2 (6th Cir. Dec. 5, 2025) ("[A] specific instance of drug trafficking does not need to involve violence, or even an immediate threat of violence, to pose a significant threat of danger." (citing *Williams*, 113 F.4th at 659)). And Taylor's claim of his nonviolent nature fails for another reason: he has a felony intimidation conviction and a misdemeanor domestic battery conviction on his record.  These convictions fall into the first *Williams* category and support a finding of dangerousness.  *See, e.g.*, *United States*

*v. Watson*, No. 24-3002, 2025 WL 833246, at \*2 (6th Cir. Mar. 17, 2025) (concluding that the defendant's domestic violence conviction supported a finding of dangerousness under § 922(g)(1)); *United States v. Wellington*, No. 24-3151, 2024 WL 4977138, at \*2 (6th Cir. Dec. 4, 2024) (concluding defendant was "dangerous given his convictions for drug trafficking and attempted domestic violence").

Taylor briefly argues that his felony drug trafficking convictions do not demonstrate dangerousness because the "convictions were for performance enhancement substances for bodybuilding" and "predated the Indictment in this case by 12 years." CA6 R. 10, Appellant Br., at 5. We deem "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," forfeited. *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (citation modified). But even if we considered Taylor's arguments, they lack merit. As the government points out, the record does not specify the type of drugs at issue in Taylor's drug trafficking convictions. Additionally, Taylor has not explained why we should treat the trafficking of performance enhancement substances differently from other drug trafficking. And although it is true that Taylor's drug trafficking convictions were 12 years old at the time of his indictment, he cites no authority suggesting we may not consider these convictions due to their age. Indeed, we have held that district courts "may evaluate a defendant's entire criminal record." *Williams*, 113 F.4th at 663. Thus, we reject Taylor's argument that the age of his drug trafficking convictions precludes a finding of dangerousness.

III.

For these reasons, we hold that § 922(g)(1) is constitutional as applied to Taylor and affirm the district court's judgment.